ADAMS TELCOM, INC.,
et al., Petitioners,

v.

FEDERAL COMMUNICATIONS
COMMISSION; United States
of America, Respondents,

American PCS, L.P., et al., Intervenors.

93–1103 to 93–1105.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 16, 1994.

Decided Oct. 28, 1994.

Rehearing Denied Jan. 6, 1995
in No. 93–1103.

Robert M. Jackson (for petitioner San Marcos Telephone Co., Inc.), with whom Stephen G. Kraskin, Sylvia L. Lesse (for petitioners Adams Telcom, Inc., Columbia Wireless Ltd. Partnership, East Ascension Telephone Co., Inc., Middle Georgia Personal Communications, Paramount Wireless Ltd. Partnership, Reserve Telephone Co., Inc., and Tri–Star Communications, Inc.), Harold Mordkofsky (for petitioner San Marcos Telephone Co., Inc.), and William J. Franklin (for petitioners Wireless Communications Services, Gateway Technology, Inc., Snowcap Communications, Inc., 2001 Technology, Inc., and Prospective Communications, Inc.) were on the joint brief, for petitioners. Caressa D. Bennet entered an appearance for petitioners Adams Telcom, Inc., et al. Kenneth E. Hardman entered an appearance for petitioners Advanced Tel., Inc. and Reserve Telecommunications and Computer Corp.

John E. Ingle, Deputy Associate Gen. Counsel, Federal Communications Com'n ("FCC"), with whom William E. Kennard, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, Laurence N. Bourne, Counsel, FCC, and Anne K. Bingaman, Asst. Atty. Gen., Robert B. Nicholson, and Robert J. Wiggers, Attys. U.S. Dept. of Justice, were on the brief, for respondents. James M. Carr, Counsel, FCC, entered an appearance for respondents.

Kurt A. Wimmer and Jonathan D. Blake entered appearances for intervenor American PCS, L.P. Peter D. Keisler and David W. Carpenter entered appearances for intervenor American Telephone and Telegraph Co. Ray M. Senkowski entered an appearance for intervenor Mobile Telecommunications Technologies Corp. Laura H. Phillips and Werner K. Hartenberger entered appearances for intervenor Cox Enterprises, Inc.

Before BUCKLEY, GINSBURG, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Fifteen petitioners seek review of the Federal Communications Commission's order dismissing their "pioneer's preference" applications for failure to meet the Commission's filing requirements. We conclude that the Commission's action was based on a reasonable interpretation of its regulations and that

petitioners were not prejudiced by the disparate treatment they received.

## I. BACKGROUND

### A. The Pioneer's Preference

In 1991, the FCC undertook to encourage the development of new radio communications services and technologies by modifying its traditional approach to the award of new licenses. *Establishment of Procedures to Provide a Preference to Applicants Proposing an Allocation for New Services ("Preference Procedures Report"),* 6 F.C.C.R. 3488 (1991). To this end, the Commission adopted new "pioneer's preference" rules that allowed it to provide preferential treatment for the developers of new services and technologies who, under the FCC's traditional methods of assigning radio communications licenses (e.g., lotteries or comparative hearings), secured no advantage from their innovations. *Id.* at 3488–90. The rules were designed to ensure that such developers would have the chance to reap the commercial benefits of their innovations. Under the new rules, a license applicant for a new service which has received a pioneer's preference is not subjected to competing applications and is "guarantee[d]" a license so long as: (1) it is "otherwise qualified" and (2) the Commission ultimately decides to authorize the proposed service. *Id.* at 3492. The FCC's stated purpose in awarding a

> pioneer's preference is to reduce the risk and uncertainty innovating parties face in our existing rulemaking and licensing procedures, and therefore to encourage the development of new services and new technologies.

*Id.* In order to retain the flexibility provided by the freedom to make case-by-case assessments of applications, the FCC declined to provide bright-line rules describing what would qualify as an innovation worthy of preferential licensing; but it did offer the following guidance:

> Generally, we believe that an innovation could be an added functionality, a different use of the spectrum than previously available, or a change in the operating or technical characteristics of a service, any of which involve a substantial change from

that which existed prior to the time the preference is requested.

*Id.* at 3494.

While the Commission acknowledged that "the potential for a reward could encourage hastily-developed proposals and attract speculators," it believed that a properly structured preference system could "significantly mitigate these problems." *Id.* at 3490. To this end, it adopted rules governing the filing and evaluation of pioneer's preference applications. This controversy centers on the following passage in section 1.402(a) of the rules:

> Each preference request must contain pertinent information concerning a description of the service to be provided, the applicant's plan for implementing the service, the frequencies it proposes to use, and the area for which the preference is sought, and must address any conflicting licensing rules, showing how these rules should or should not apply. The applicant must demonstrate that it (or its predecessor-in-interest) has developed the new service or technology; *e.g.,* that it (or its predecessor-in-interest) has developed the capabilities or possibilities of the technology or service or has brought them to a more advanced or effective state. The applicant must accompany its preference request with either a demonstration of the technical feasibility of the new service or technology or an experimental license application....

47 C.F.R. § 1.402(a) (1993).

An applicant receives a pioneer's preference only if it survives a three-step process. The Commission must first determine whether an application meets the filing requirements. If it does, the Commission will issue a notice of proposed rulemaking in which it tentatively grants or denies the applicant a pioneer's preference and solicits public comments on the desirability of the new service or technology the applicant proposes to offer. If, after receiving comments, the Commission wishes to grant a pioneer's preference, it will do so at the time it adopts the new rules (if any) that are necessary to establish the new service. *Id.* § 1.402(d), (e) (1993). Applicants denied a pioneer's preference are not

precluded from receiving licenses for the services they wish to provide. They must, however, compete with other interested parties for the portion of the spectrum that remains available after the Commission awards licenses to qualified pioneer's preference recipients.

### B. Petitioners' Preference Applications

In 1990, the FCC sought comments on how it should regulate the development of "personal communications services," roughly defined as technologies that free individuals from the constraints of the telephone wire and allow them to send and receive communications while away from their homes or offices. 5 F.C.C.R. 3995 (1990). In response to the FCC's interest in developing these new technologies and pursuant to the pioneer's preference rules as subsequently adopted, 96 parties filed pioneer's preference applications seeking licenses to use a portion of the radio spectrum to provide these services. Nineteen of them were filed prior to April 3, 1992. On that day, the Commission issued a public notice specifying May 4, 1992, as the final date it would accept pioneer's preference requests. The remaining 77 applications, including those of the 15 petitioners, were filed between April 3 and the May 4 deadline.

On May 22, 1992, the FCC's Chief Engineer sent each petitioner a terse form letter explaining that its application had been "dismissed for failure to meet the Commission's filing requirements." Dismissal Letters, Joint Appendix at 715–44. In each case, the Chief Engineer explained that the application failed to describe the "specific attributes" of a proposed service or "otherwise document[ ] the role of [petitioner] in having developed a specific distinctive innovation or new technology for which a pioneer's preference is sought." *Id.*

Petitioners sought reconsideration by the FCC, claiming that their applications did in fact meet the filing requirements. Certain petitioners also argued that the Commission should reverse the Chief Engineer's dismissals because it had accepted, for notice and comment, applications that were comparable to theirs, but had been filed before the Com-

mission's April 3 announcement of its May 4 deadline. On October 8, 1992, the FCC affirmed the dismissals of petitioners' applications. *Tentative Decision and Memorandum Opinion and Order ("Preference Order"),* 7 F.C.C.R. 7794, 7809–13 (1992). It found that the applications did no more than describe concepts for new services and technologies that were yet to be developed, whereas the rules "clearly indicate that [the Commission] requires claims to be based on work already accomplished." *Id.* at 7812. It maintained, further, that the different treatment accorded the applications filed before and after April 3 was justified by the different expectations of the two groups on their respective filing dates. The Commission also stated that even if the disparate treatment was not justified, petitioners were not prejudiced by the error because all defective preference requests would ultimately be denied, whether or not they were initially accepted for notice and comment. *Id.* at 7810.

Petitioners seek our review of that order, arguing that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988).

### II. DISCUSSION

#### A. The FCC's Interpretation of the Pioneer's Preference Regulations

An agency's interpretation of its own regulations is entitled to deference "unless it is plainly erroneous or inconsistent with the regulation." *K N Energy, Inc. v. FERC,* 968 F.2d 1295, 1299 (D.C.Cir.1992) (internal quotation marks omitted). Moreover, reviewing courts will "accord even greater deference to agency interpretations of agency rules than they do to agency interpretations of ambiguous statutory terms." *Capital Network System, Inc. v. FCC,* 28 F.3d 201, 206 (D.C.Cir.1994). The central question in this dispute is whether the FCC erred in its interpretation of the pioneer's preference filing regulations. The specific provision at issue is the requirement, in section 1.402(a), that an applicant

demonstrate that it (or its predecessor-in-interest) *has developed* the new service or

technology; *e.g., that it* (or its predecessor-in-interest) *has developed the capabilities or possibilities* of the technology or service or has brought them to a more advanced or effective state.

47 C.F.R. § 1.402(a) (emphasis added).

At oral argument, petitioners acknowledged that their applications described concepts rather than existing capabilities. They maintain that these descriptions demonstrated that they had developed the "possibilities" of new technologies or services and therefore satisfied the requirements of section 1.402(a). They argue, further, that any construction that mandates a demonstration of "work already accomplished" would be inconsistent with the subsequent sentence of the regulation, which requires that preference requests be accompanied by "either a demonstration of the technical feasibility of the new service or an experimental license application." *Id.* They assert that this language confirms that an applicant must either have developed a new service or technology whose technical feasibility it is able to demonstrate or, as in their cases, have developed the possibilities of a new technology or service that it will have the opportunity to test upon the grant of an experimental license.

The FCC responds by emphasizing the regulation's use of the present perfect tense—"has developed"—to describe what it is that an applicant must demonstrate, noting that the subsequent reference to "capabilities or possibilities" merely elaborates on the basic requirement that the applicant must "ha[ve] developed the new service or technology." It maintains that this language necessarily implies that development must have preceded the filing of an application; and as petitioners did not show in their applications that they had already created any tangible technology or service capabilities, they failed to meet this most fundamental requirement for a pioneer's preference. According to the Commission, this interpretation of the development requirement is consistent with the regulation's subsequent sentence because an experimental license application serves as an alternative for a showing of technical feasibility, not for a showing of development.

While petitioners' interpretation of section 1.402(a) is colorable, we find the Commission's construction—that a pioneer's preference application must demonstrate innovative work beyond the conceptualization of a new service—is clearly reasonable. It follows logically from the regulation's explicit requirement that an applicant demonstrate development and from the underlying goal of preferential licensing: to encourage investment of time and resources in research and development, not to enable those capable of beating the fastest path to the FCC office to control scarce public resources. The FCC's interpretation is also consistent with the regulation's requirement that an applicant either demonstrate its innovation's technical feasibility or apply for an experimental license. No matter how promising the development of a new service or technology may appear on the basis of engineering studies and laboratory work, actual field testing may be required before its technical feasibility can be established.

Petitioners also attack the Commission's interpretation of the regulation on the ground that a requirement that development work have already been accomplished could not have been discerned from the section's text; thus, they were deprived of adequate notice of the requirement. While it is true that applicants are "entitled to expect rules defining the required content of applications that are reasonably comprehensible to men acting in good faith," *Radio Athens, Inc. (WATH) v. FCC,* 401 F.2d 398, 404 (D.C.Cir. 1968), "we do not require that the agency [make] the clearest possible articulation" of application requirements. *McElroy Elec. Corp. v. FCC,* 990 F.2d 1351, 1358 (D.C.Cir. 1993). Petitioners are not entitled to bright-line rules so long as they "knew or should have known what the Commission expected of them." *Id.* The use of the present perfect tense—"has developed"—in the regulation and the reasons advanced by the FCC for the creation of the pioneer's preference program provided legally sufficient notice to petitioners of the likelihood that the Commission would require more than a concept before it would consider granting them a preferential license.

**B. Petitioners' Disparate Treatment Charge**

■ Petitioners also claim that the FCC's dismissal of their applications was arbitrary and capricious because it had accepted, for notice and comment, similar applications that had been submitted prior to April 3, 1992. Although we find petitioners' complaint to be valid, we decline to reverse the Commission on this basis because the disparate treatment accorded those who had filed their applications before and after April 3 ("early" and "late filers") did not prejudice petitioners.

We have recently reminded the FCC "of the importance of treating similarly situated parties alike or providing an adequate justification for disparate treatment." *McElroy Elec. Corp.*, 990 F.2d at 1365; *see also Melody Music, Inc. v. FCC*, 345 F.2d 730, 733 (D.C.Cir.1965) (FCC must "do more than enumerate factual differences, if any, between appellant and the other cases; it must explain the relevance of those differences to the purposes of the Federal Communications Act"). In this instance, the Commission has failed to do either.

In their petitions for reconsideration, five petitioners compared the substance of their preference applications to those of five early applicants that were accepted for notice and comment. The Commission conceded that it used a less stringent standard for determining whether early filers met the filing requirements than it did for late filers. It attempted to justify the disparate treatment by noting that at the time they applied for pioneer's preferences, the early filers had an unspecified amount of time within which to "buttress or perfect" their applications while late filers had no such opportunity because of the May 4, 1992, deadline. *Preference Order*, 7 F.C.C.R. at 7811. This distinction, however, does not suggest any logical basis for the different treatment accorded the early and late filers. Although the former had the advantage of being able to submit additional perfecting or supplemental information before the deadline, this does not explain why all of the applications should not have received similar treatment once the May 4 deadline had passed. As of that date, the FCC was in a position to judge each of the applications in accordance with a single standard.

At oral argument, counsel for the Commission suggested that the difference in treatment was more theoretical than real: Whereas the early filers had the opportunity after May 4 to press for the acceptance of their applications in the course of the notice and comment proceedings, the late filers had the equivalent opportunity in pursuing their petitions for reconsideration. Counsel stated, further, that in the end the Commission accorded each group the same treatment because, in its *Preference Order*, it simultaneously denied the early filers' applications and affirmed the dismissals of petitioners' applications.

That last statement was incorrect. In the *Preference Order*, the FCC dismissed with finality petitioners' applications, but only *tentatively* denied the early applications. *See id.* at 7804–05 ("requests are tentatively denied for failure to submit either the preliminary results from an experiment or a sufficient showing of technical feasibility"). They were not finally denied until February 3, 1994, almost 16 months after the issuance of the *Preference Order. Third Report and Order*, 9 F.C.C.R. 1337, 1356–68 (1994). Moreover, the FCC's explanations of its decisions in the final denial order affirm that the early filers had the opportunity to seek a reversal of the tentative denials. *See, e.g., id.* at 1356 (applicant "has not provided any additional information to demonstrate an innovative contribution in [personal communications services] technology to warrant the grant of a pioneer's preference"); 1357 (applicant "did not respond to" the order tentatively dismissing its application). While the early filers were ultimately held to the same standard as petitioners, they were nevertheless offered an opportunity to continue to plead their cases—an opportunity that was denied the latter.

There can be no question, then, that the Commission treated these similar pioneer's preference applicants differently. But, contrary to the position taken by petitioners, the Commission's error was its failure to dismiss the early filers' applications for the same reason that it later dismissed those of the

late filers—not its failure to treat the latter as it had the former. This error, moreover, does not require us to vacate and remand the Commission's order dismissing petitioners' applications: "A remand is unnecessary where, as here, the outcome of a new administrative proceeding is preordained." *American Train Dispatchers Ass'n v. ICC,* 26 F.3d 1157, 1163 (D.C.Cir.1994). The FCC is bound by its pioneer's preference rules. *See Reuters Ltd. v. FCC,* 781 F.2d 946, 950 (D.C.Cir.1986) ("[I]t is elementary that an agency must adhere to its own rules and regulations."). Under section 1.402(a), as interpreted, the Commission may not grant a pioneer's preference to an applicant that fails to demonstrate in its application that it has developed more than the mere concept for a new communications service or technology. Consequently, a remand in this case would serve no purpose.

C. Sufficiency of Explanation

▮ Petitioners also challenge the FCC's order on the basis that the Commission did not adequately explain the reasons for its decision. The agency must "articulate a satisfactory explanation for its action," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Although the Chief Engineer's dismissal letters and the Commission's *Preference Order* provided only brief explanations of why petitioners' applications failed to satisfy the pioneer's preference filing requirements, those explanations were sufficient for us (and the parties) to understand the basis for the decision: Petitioners' applications described only concepts, not developed service or technological capabilities. No more than this is required. *See id.* ("We will ... uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (internal quotation marks omitted).

III. CONCLUSION

We hold that the FCC's dismissals of petitioners' pioneer's preference applications were based on a reasonable interpretation of the agency's application filing rules and that the Commission sufficiently articulated its justification for the dismissals. While the Commission erred in applying a different standard of review to late filings than it did to early filings, a remand is unnecessary because the FCC would be bound by its rules to deny petitioners' applications. The petitions for review are therefore

*Denied.*