103 F.3d 169
 322 U.S.App.D.C. 263, 5 Communications Reg.
(P&F) 1280
 FREEMAN ENGINEERING ASSOCIATES, INC., et al., Appellants/Petitioners
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Appellees/Respondents,
US West, Inc., et al., Intervenors.
 Nos. 94-1779, 95-1055, 95-1060, 95-1065 and 95-1074.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued November 12, 1996.
Decided January 7, 1997.
 
 [322 U.S.App.D.C. 268] Appeal and Petitions for Review of Orders of the Federal Communications Commission.
 Veronica M. Ahern and Gene A. Bechtel, argued the cause, for appellants/petitioners, with whom Harold Mordkofsky, Robert M. Jackson, Harry F. Cole, George H. Shapiro and Robert B. Kelly, Washington, DC, were on the joint briefs.
 James M. Carr, Counsel, Federal Communications Commission, argued the cause, for appellees/respondents, with whom William E. Kennard, General Counsel, Daniel M. Armstrong, Associate General Counsel, John E. Ingle, Deputy Associate General Counsel, Anne K. Bingaman, Assistant Attorney General, United States Department of Justice, and Robert B. Nicholson, Attorney, were on the brief. Robert J. Wiggers, Attorney, Washington, DC, entered an appearance.
 Before: GINSBURG, SENTELLE and ROGERS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 Five appellants/petitioners appeal from and seek review of a Federal Communications Commission ("FCC" or "Commission") order which dismissed their applications for "pioneer's preferences." Appellants/petitioners claim that the dismissal of their applications was not only arbitrary and capricious, but was also influenced by improper ex parte contacts. As an initial matter, we conclude that these claims are properly before us as timely filed petitions for review. Upon considering the petitions, we grant one and deny the rest.
 
 I. Background
 
 2
 Until the early 1990s, the FCC employed only lotteries and comparative hearings to assign licenses for radio communications services. Concerned that innovation was being stifled by the uncertainty of this licensing process, the FCC adopted "pioneer's preference" rules in 1991. Establishment of Procedures to Provide a Preference to Applicants Proposing an Allocation for New Services, 6 F.C.C.R. 3488, 3492 p 32 (1991) [hereinafter Pioneer's Preference Order]. Under these rules, an applicant that demonstrates "that it (or its predecessor-in-interest) has developed an innovative proposal that leads to the establishment of a service not currently provided or a substantial enhancement of an existing service" may receive a pioneer's preference when the Commission adopts rules governing the new or enhanced service. 47 C.F.R. § 1.402(a). A preference "effectively ... guarantee[s] the innovating party a license in the new service (assuming it is otherwise qualified) by permitting the recipient of a pioneer's preference to file a license application without being subject to competing applications." Pioneer's Preference Order, 6 F.C.C.R. at 3492 p 32. A party that does not receive a pioneer's preference may obtain a license for the relevant service only by competing on a separate track with other applicants for the remaining licenses. The Commission expected that this revised licensing process, by giving preferential treatment to telecommunications pioneers, would "help to ensure that innovators have an opportunity to participate either in new services that they take a lead in developing or in existing services to which they wish to apply new technologies." Id. at 3488 p 1.
 
 
 3
 When the Commission adopted the pioneer's preference rules, it explained that "the key determinant of whether a pioneer's preference would be awarded is the degree to which a proposed service or technology is 'new' or 'novel.' " Id. at 3493 p 43. An applicant "must demonstrate ... that it (or its [322 U.S.App.D.C. 269] predecessor-in-interest) has developed the capabilities or possibilities" of a new service or technology "or has brought them to a more advanced or effective state." 47 C.F.R. § 1.402(a). Elaborating on this point, the Commission indicated that it would not award a preference for a new technology that is not "associated with a licensable service." Pioneer's Preference Order, 6 F.C.C.R. at 3492 p 37. In addition, the applicant "must accompany its preference request with either a demonstration of the technical feasibility of the new service or technology or an experimental license application, unless [such an] application has previously been filed for that new service or technology." 47 C.F.R. § 1.402(a). Finally, a pioneer's preference will be granted "only where [FCC] rules, as adopted, are a reasonable outgrowth of the [applicant's] proposal and lend themselves to the grant of a preference." Id.
 
 
 4
 The Commission has applied its pioneer's preference rules to a number of services, including personal communications services ("PCS"). PCS is a family of mobile or portable radio communications services "that free individuals from the constraints of the telephone wire and allow them to send and receive communications while away from their homes or offices." Adams Telcom, Inc. v. FCC, 38 F.3d 576, 579 (D.C.Cir.1994). The Commission has divided the PCS family into two service categories: (1) narrowband (900 MHz) PCS, and (2) broadband (2 GHz) PCS.
 
 
 5
 The appellants/petitioners in this case--QUALCOMM Incorporated ("QUALCOMM"); Advanced MobilComm Technologies, Inc. jointly with Digital Spread Spectrum Technologies, Inc. ("AMT/DSST"); Freeman Engineering Associates, Inc. ("Freeman"); Viacom International, Inc. ("Viacom"); and Advanced Cordless Technologies, Inc. ("ACT")--filed pioneer's preference applications in the initial PCS rulemaking proceeding, GEN Docket No. 90-314. The Commission received a total of ninety-six preference requests in this proceeding. The GEN Docket proceeding was eventually reserved for broadband PCS preference requests. A separate proceeding, ET Docket No. 92-100, was established for narrowband PCS pioneer's preference applications.
 
 
 6
 In November 1992, the Commission released its tentative decision concerning the pioneer's preference requests filed in the broadband proceeding. Amendment of the Commission's Rules to Establish New Personal Communications Services: Tentative Decision and Memorandum Opinion and Order, 7 F.C.C.R. 7794 (1992) [hereinafter Tentative Decision]. In the Tentative Decision, the Commission affirmed a decision by the Commission staff to dismiss thirty-nine preference applications for failure to provide the information required by the pioneer's preference rules. Id. at 7809-13 pp 37-49. The Commission also tentatively decided to grant pioneer's preferences to American Personal Communications ("APC"), Cox Enterprises, Inc. ("Cox"), and Omnipoint Communications, Inc. ("Omnipoint"). Id. at 7797-7804 pp 6-23.
 
 
 7
 The Commission's Tentative Decision also reached tentative conclusions with respect to appellants'/petitioners' pioneer's preference applications. As to ACT's proposal, the Commission first noted that ACT's proposed CT-2 service was a "candidate[ ] for the 900 MHz spectrum proposed in the Notice for narrowband PCS." Id. at 7806 p 27. The Commission then concluded that ACT's proposal was not innovative in that CT-2 service had already been developed and "implemented in various parts of the world." Id. Thus, the Commission tentatively denied ACT's preference request. Id. Freeman's preference request was tentatively denied for failure to "demonstrate the feasibility of the technology." Id. at 7805 p 25. The Commission tentatively rejected Viacom's preference application on the ground that it was not innovative, but rather was merely a "compilation[ ] or aggregation[ ] of existing communications technologies or systems." Id. at 7805 p 26. As for AMT/DSST's proposal, the Commission recognized that it appeared "innovative," but deemed it unworthy of a preference for two reasons. First, AMT/DSST had not developed its technology "to the point of field testing." Id. at 7807 p 30. Further, the spectrum scheme AMT/DSST proposed was "substantially different than that which [the Commission] proposed." Id. Finally, the Commission tentatively rejected [322 U.S.App.D.C. 270] QUALCOMM's preference request on the grounds that its proposed technology was "essentially ... identical to that which it already ... developed for use in the 800 MHz cellular bands" and that it had not "developed and tested 2 GHz equipment." Id. at 7807 p 32.
 
 
 8
 Several months later, on July 23, 1993, the Commission released its order in the narrowband proceeding. Amendment of the Commission's Rules to Establish New Narrowband Personal Communications Services: First Report and Order, 8 F.C.C.R. 7162 (1993) [hereinafter First R&O]. ACT's preference request was denied in this order for the same reasons set forth in the Tentative Decision. First R&O at 7176 p 82. ACT petitioned for reconsideration of this order on November 3, 1993, seventy-three days after the deadline for seeking reconsideration had passed. The Commission rejected the reconsideration petition as untimely. Amendment to the Commission's Rules to Establish New Narrowband Personal Communications Services: Memorandum Opinion and Order, 9 F.C.C.R. 1309, 1317 (1994).
 
 
 9
 In the meantime, the Commission received numerous comments concerning its Tentative Decision. After receiving these comments, the Commission issued an order granting broadband pioneer's preferences to APC, Cox, and Omnipoint. Amendment of the Commission's Rules to Establish New Personal Communications Services: Third Report and Order, 9 F.C.C.R. 1337, 1339 (1994) [hereinafter Third R&O]. The Commission denied the remaining preference requests in the broadband proceeding. Id. at 1349-73 pp 81-301. Freeman's application was again denied for lack of "feasibility." Id. at 1365 p 221. The Commission denied AMT/DSST's application for "incompatib[ility] with the spectrum scheme adopted" as well as lack of "technical feasibility." Id. at 1359 pp 165-66. Viacom's application was denied on the ground that it was merely a "compilation[ ] of existing technologies." Id. at 1373 p 301. As for QUALCOMM, the Commission recognized that it had, in fact, done work at 2 GHz, but nonetheless concluded that no preference should be granted because the work was merely an adaptation of existing technology. Id. at 1369-70 p 266. ACT's pioneer's preference application was not mentioned in the Third R&O.
 
 
 10
 AMT/DSST and QUALCOMM petitioned for reconsideration of the Third R&O. Freeman and Viacom did not. The Commission denied the petitions for reconsideration filed by AMT/DSST and QUALCOMM for the same reasons set forth in the Third R&O. Amendment of the Commission's Rules to Establish New Personal Communications Services: Memorandum Opinion and Order, 9 F.C.C.R. 7805, 7808 p 14, 7811 p 35 (1994) [hereinafter Reconsideration Order]. Though ACT's preference application was not mentioned in the Third R&O, it too petitioned for reconsideration of the order. The Commission rejected ACT's petition for reconsideration on the ground that ACT was "merely again seeking reconsideration of the denial of its preference [request] in the First R&O." Id. at 7807. All five parties appealed from and petitioned for review of the Commission's orders.
 
 II. Analysis
 A. Jurisdiction
 
 11
 The Commission contends that we are without jurisdiction to hear the claims raised by ACT and Viacom because their petitions for review were untimely filed. Section 402(b) of the Communications Act provides that a party whose application for a license has been denied by the FCC may appeal to this court, as may a person aggrieved by the Commission's decision to grant or deny the license. 47 U.S.C. § 402(b). Such appeal must be taken "within thirty days from the date upon which public notice is given of the decision or order complained of." Id. § 402(c). As to any Commission order that is not appealable under § 402(b), a petition for review may be filed under § 402(a) to "enjoin, set aside, annul, or suspend" the order. Id. § 402(a). Petitions for review under § 402(a) must be filed "within 60 days after ... entry" of the order. 28 U.S.C. § 2344.
 
 
 12
 In their opening brief, ACT and Viacom (as well as the other appellants/petitioners) assert that we have jurisdiction over [322 U.S.App.D.C. 271] their claims under § 402(b). Alternatively, appellants/petitioners assert jurisdiction under § 402(a). However, "the provisions for judicial review contained in §§ 402(a) and 402(b) are mutually exclusive." Friedman v. FCC, 263 F.2d 493, 494 (D.C.Cir.1959); Rhode Island Television Corp. v. FCC, 320 F.2d 762, 766 (D.C.Cir.1963). A claim may be brought only under one of the two provisions. Therefore, we must determine whether the appeal-petitions filed by ACT and Viacom may be brought as appeals under § 402(b) or petitions for review under § 402(a). The distinction is critical in this case since the appeal-petitions of ACT and Viacom were filed thirty-three and thirty-five days, respectively, after the Commission's Reconsideration Order was published in the Federal Register. Ifs 402(b) were the proper route of review, then the appeals filed by ACT and Viacom were untimely under 47 U.S.C. § 402(c). An untimely appeal "must be dismissed" for lack of jurisdiction. Waterway Communications Sys., Inc. v. FCC, 851 F.2d 401, 405 (D.C.Cir.1988) (emphasis in original). If, on the other hand, § 402(a) were the proper method of obtaining review of the Commission's order, then the petitions of Viacom and ACT were timely, and we may consider their claims.
 
 
 13
 On its face, § 402(b) appears inapplicable to this case since the Commission neither granted nor denied a license in the proceedings from which ACT and Viacom appeal-petition. The Commission responds that the denial of a pioneer's preference application is "ancillary to" the grant of a license, and thus within our jurisdiction under § 402(b). In Tomah-Mauston Broad. Co., Inc. v. FCC, 306 F.2d 811, 812 (D.C.Cir.1962), we held that a Commission order " 'ancillary' to the grant of a construction permit ... is reviewable under Section 402(b)(6)." We have not, however, held that a decision to grant or deny a pioneer's preference application is "ancillary to" the license itself, and we do not so hold now. As we stated in Waterway Communications, "relief ... under § 402(b) requires as a trigger the grant or denial of a license application." 851 F.2d at 403. The Commission does not grant licenses at the time a pioneer's preference is awarded. Nor does the grant of a preference irrevocably commit the Commission to grant a license. The recipient of a pioneer's preference must still be "otherwise qualified" in order to obtain a license. Pioneer's Preference Order, 6 F.C.C.R. at 3492 p 32. It therefore appears that our jurisdiction to review a denial of a pioneer's preference application is not governed by § 402(b), but falls within § 402(a).
 
 
 14
 Our decision in Adams Telcom, Inc. v. FCC, 997 F.2d 955 (D.C.Cir.1993), supports this reading of § 402. In Adams, we considered whether a petition for review of an FCC order dismissing an application for a pioneer's preference had been filed within the sixty-day filing period established by 28 U.S.C. § 2344. 997 F.2d at 956. In addressing this question, we never explicitly held that a petition for review was the proper method of obtaining judicial review of a Commission order denying an application for a pioneer's preference. Nor did we ever cite § 402(a). Nevertheless, the applicability of § 402(a)'s sixty-day filing deadline was implicit in our holding.
 
 
 15
 The FCC disputes the authority of the implicit dicta of Adams, quoting Mobile Communications Corp. of America v. FCC, 77 F.3d 1399, 1408 (D.C.Cir. ), cert. denied, --- U.S. ----, 117 S.Ct. 81, 136 L.Ed.2d 38 (1996), to the effect that a challenge to the grant of a pioneer's preference "may be viewed as an attack on the grant of a license, which the pioneer's preference was intended to 'guarantee,' ... and thus within our jurisdiction under 47 U.S.C. § 402(b)(6)." The Commission, however, reads that statement out of context. Immediately following that sentence we stated: "Alternatively, the challenge may be viewed as an attack on an order not appealable under § 402(b) and thus within our jurisdiction under § 402(a).... There being no other apparent possibilities, and the timing and venue provisions of both subsections being satisfied, we have jurisdiction." Id. In other words, we did not reach the issue in Mobile Communications because it did not affect the outcome of the case. Mobile Communications provides no support for the Commission's position.
 
 
 16
 [322 U.S.App.D.C. 272] In sum, we hold that the Commission's denial of a pioneer's preference is neither a denial of a license nor is it ancillary to such, and thus it is not appealable under § 402(b) of the Communications Act. Therefore, our jurisdiction derives from § 402(a)'s grant of authority to review petitions of aggrieved parties. Because ACT and Viacom's petitions for review were clearly filed within the sixty-day period, we have jurisdiction to consider their claims.
 
 B. Arbitrary and Capricious Claims
 
 17
 Petitioners each assert that the Commission's decision to reject their pioneer's preference request was arbitrary and capricious in violation of the Administrative Procedure Act. 5 U.S.C. § 706(2)(A). Under the arbitrary and capricious standard of review, we do not "substitute [our] judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Rather we look to see "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Id. (internal quotations omitted). An agency decision will be considered arbitrary if it "runs counter to the evidence before the agency." Id. Further, an agency may not "treat like cases differently." Airmark Corp. v. FAA, 758 F.2d 685, 691 (D.C.Cir.1985). We apply these principles of review to each of the petitions before us.
 
 1. QUALCOMM
 
 18
 Under the Commission's pioneer's preference rules, a preference will be granted only when an applicant demonstrates "that it ... has developed an innovative proposal that leads to the establishment of a service not currently provided or a substantial enhancement of an existing service." 47 C.F.R. § 1.402(a). The Commission rejected QUALCOMM's pioneer's preference request for lack of innovativeness, finding that the proposed technology was merely an adaptation of its previously developed 800 MHz system to the 2 GHz PCS band. According to the Commission, adaptation of technology that was not "developed specifically for the advancement of a particular service" is not innovative. Reconsideration Order, 9 F.C.C.R. at 7810 p 34. QUALCOMM contends that this ruling was arbitrary because the Commission has never required that technology be "developed specifically for a particular service" in order to obtain a pioneer's preference.
 
 
 19
 The Commission reads its pioneer's preference rule to require that a proposal lead to or substantially enhance "a service," the emphasis being on the word "a." 47 C.F.R. § 1.402(a) (emphasis added). QUALCOMM, by contrast, argues that the emphasis of the rule was on the word "service." In other words, according to QUALCOMM, the rules provide that the Commission will not grant a pioneer's preference simply for the development of technology unrelated to some service.
 
 
 20
 At its core, QUALCOMM's argument constitutes a challenge to the Commission's interpretation of its pioneer's preference rules. We will defer to the FCC's interpretation of its own regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation." Jersey Shore Broad. Corp. v. FCC, 37 F.3d 1531, 1536 (D.C.Cir.1994) (citations and quotations omitted). Indeed, we will "accord even greater deference to agency interpretations of agency rules than [we] do to agency interpretations of ambiguous statutory terms." Capital Network Sys., Inc. v. FCC, 28 F.3d 201, 206 (D.C.Cir.1994). "Our role is not to ensure that [the Commission's] reading is the most natural or most logical, but only that it is reasonable and consistent with the regulations." K N Energy, Inc. v. FERC, 968 F.2d 1295, 1299-1300 (D.C.Cir.1992) (internal quotations omitted). We cannot say that the Commission's interpretation is unreasonable or inconsistent with the regulation. Therefore, we must defer to the Commission's interpretation.
 
 
 21
 Applying its interpretation of the pioneer's preference rule, the Commission concluded that QUALCOMM's proposal was not deserving of a preference. Reconsideration Order, 9 F.C.C.R. at 7810-11 pp 34-35. The Commission recognized that QUALCOMM [322 U.S.App.D.C. 273] "ha[d] done work at 2 GHz" and that the resulting "equipment appear[ed] viable for the provision of PCS." Third R&O, 9 F.C.C.R. at 1370 p 266. But the Commission also found that QUALCOMM's equipment was initially "developed for implementation of its 800 MHz digital cellular system" and then merely adapted "to the 2 GHz PCS band." Id. at 1369 p 266. Under the Commission's reasonable interpretation of the pioneer's preference rules, such adaptations are not eligible for a preference.
 
 
 22
 QUALCOMM argues that the Commission erred in concluding that its proposed technology was already "existing" given that, "[a]t the time QUALCOMM filed its preference request, no CDMA digital cellular service at any frequency had been implemented commercially anywhere in the world." Petitioner's Brief at 31. According to QUALCOMM, the Commission has subsequently held that whether a technology is "existing" depends on whether it has been "implemented in an existing service." Id. at 32 n. 71 (citing Review of the Pioneer's Preference Rules: Memorandum Opinion and Order, 11 F.C.C.R. 2468, 2469 (1996) [hereinafter Review] ).
 
 
 23
 At the time the FCC denied QUALCOMM's preference request, the Commission defined an existing technology as one that has been "developed for implementation of [a service]." See Reconsideration Order, 9 F.C.C.R. at 7810 p 32 (emphasis added). Undoubtedly, it was reasonable to define an "existing" technology as one that has been "developed." We agree that there appears to be some tension between this definition and the one set forth in the Commission's subsequent Review. See 11 F.C.C.R. at 2469 p 10 (stating that "a technology should be eligible for a pioneer's preference .... provided that the technology has not previously been implemented in an existing service."). But "[w]e have held that the FCC is not bound retroactively by its subsequent decisions and need not explain alleged inconsistencies in the resolution of subsequent cases." See CHM Broad. Ltd. Partnership v. FCC, 24 F.3d 1453, 1459 (D.C.Cir.1994). Any inconsistency between the two definitions should have been pursued in the subsequent proceeding, not this one. Amor Family Broad. Group v. FCC, 918 F.2d 960, 962 (D.C.Cir.1990).
 
 
 24
 QUALCOMM also makes much of the fact that the Commission, in its Tentative Decision, erroneously concluded that QUALCOMM had not "developed and tested 2 GHz equipment." Tentative Decision, 7 F.C.C.R. at 7807 p 32. The Commission concedes that this conclusion was erroneous. This error, however, was not repeated in either the Third R&O or the Reconsideration Order. The erroneous conclusion in the Tentative Decision is irrelevant so long as it has since been corrected. Indeed, the very purpose of issuing tentative decisions is to afford the Commission an opportunity to correct any errors. See Public Citizen Health Research Group v. Commissioner, FDA, 740 F.2d 21, 31 (D.C.Cir.1984).
 
 
 25
 Still further, QUALCOMM argues that the Commission's conclusion that its proposal was not innovative is indefensible in light of the fact that the United States Patent Office granted a patent for QUALCOMM's technology. This argument too is unconvincing. When the FCC promulgated its pioneer's preference rules, it explicitly acknowledged that the standard for obtaining a patent differed from the standard for obtaining a pioneer's preference. Pioneer's Preference Order, 6 F.C.C.R. at 3492 p 37. New technology standing alone is eligible for a patent, 35 U.S.C. § 101, while pioneer's preferences are granted only when "new technology is associated with a licensable service," Pioneer's Preference Order, 6 F.C.C.R. at 3492 p 37.
 
 
 26
 Finally, QUALCOMM argues that the Commission's interpretation of the rule was not applied equally to all preference applicants. According to QUALCOMM, Omnipoint received a preference for technology that was adapted from the 900 MHz to 2 GHz. In its request for a pioneer's preference, Omnipoint admitted that it began "designing the technology in 1987," several years before the pioneer's preference program was introduced. Moreover, Omnipoint stated several times in its preference request that its technology had been tested at 900 [322 U.S.App.D.C. 274] MHz. Despite these statements, Omnipoint received a pioneer's preference. By contrast, QUALCOMM was denied a preference because the Commission found that QUALCOMM's proposed technology was a non-innovative adaptation in that QUALCOMM "ha[d] been developing its ... technology since 1985" and had "validated [it] for 800 MHz." Reconsideration Order, 9 F.C.C.R. at 7811.
 
 
 27
 Numerous parties to the FCC proceedings pointed out this disparate treatment to the Commission. See Third R&O, 9 F.C.C.R. at 1346. The Commission responded to these comments not by applying the "developed specifically for a particular service" test that the Commission had applied to QUALCOMM, but by reverting to its "associated with" test, finding that Omnipoint's technology was "associated with a licensable service." Id. The Commission's explanation ended with the statement that "Omnipoint has demonstrated that it performed significant new work related to 2 GHz PCS after adoption of the pioneer's preference rules." Id. But the same could be said of QUALCOMM. QUALCOMM's adaptation was also "significant new work related to 2 GHz PCS."
 
 
 28
 In its brief to this court, the Commission responds that even if QUALCOMM and Omnipoint were disparately treated, QUALCOMM cannot complain that Omnipoint was granted a preference to which it was not entitled, relying on Adams Telcom, Inc. v. FCC, 38 F.3d 576, 581-82 (D.C.Cir.1994). But this case is easily distinguishable from Adams. In Adams, the pioneer's preference applications of similarly situated parties were subject to dissimilar procedural treatment. However, the applications of all the parties ultimately received equal treatment on the merits. See id. at 579-81. We therefore declined to remand the case on the ground that the Commission's interpretation of its pioneer's preference rules as applied to every applicant would require rejection of petitioners' applications. Id. at 581-82. In this case, by contrast, the Commission applied a newly developed (and questionable) interpretation of its pioneer's preference rules only to the merits of QUALCOMM's preference application. Were this case remanded, it is not at all clear whether the Commission would continue to adhere to this interpretation of the pioneer's preference rules.
 
 
 29
 In sum, we find reasonable the Commission's interpretation of the pioneer's preference rules such that adaptations of technology are not innovative and thus not deserving of a preference. However, we conclude that the Commission failed to apply this interpretation consistently to the detriment of QUALCOMM's application for a preference. We therefore vacate that portion of the Commission's decision denying QUALCOMM's preference request. We remand for further proceedings to remedy this inconsistency.
 
 2. AMT/DSST
 
 30
 The Commission denied AMT/DSST's preference request for lack of technical feasibility and incompatibility with the spectrum scheme adopted by the Commission. AMT/DSST argue that the Commission's decision was arbitrary and capricious for several reasons. First, AMT/DSST argue that the Commission deviated from its "own announced criteria" in rejecting their proposal. According to AMT/DSST, the Commission tentatively denied their proposal on the ground that the proposed technology had not been field tested, contrary to the Commission's stated position that field testing is not "a prerequisite to obtaining a pioneer's preference." Pioneer's Preference Order, 6 F.C.C.R. at 3493 p 39. Then, in the Third R&O, the Commission shifted its rationale and denied AMT/DSST's preference request on the ground that the proposal's "technical feasibility" had not been demonstrated. This shift, AMT/DSST argue, denied them an "effective opportunity ... to address the ostensible basis for the denial" of their pioneer's preference application.
 
 
 31
 We reject AMT/DSST's argument. As an initial matter, we do not accept the proposition that there was a shift in the Commission's rationale for rejecting AMT/DSST's preference request between the Tentative Decision and the Third R&O. In the Tentative Decision, the Commission tentatively rejected AMT/DSST's proposal because, "[w]hile many aspects of [their] proposal appear[ed] to be innovative, the experimental [322 U.S.App.D.C. 275] reports indicate[d] that AMT had just begun initiating preliminary tests ... and that DSST had performed computer simulations and spectrum studies. Neither party appears to have developed 2 GHz PCS technology to the point of field testing." 7 F.C.C.R. at 7807 p 30. While this explanation contains no explicit mention of "technical feasibility," the clear implication of the passage is that AMT/DSST's proposal was tentatively rejected because it was still in its early developmental stages, or stated another way, because its technical feasibility had not been demonstrated. Any ambiguity in the Tentative Decision was remedied in the Third R&O when the Commission stated that "AMT and DSST ... failed to demonstrate the [proposed] equipment's technical feasibility." 9 F.C.C.R. at 1359 p 166 (emphasis added).
 
 
 32
 Even were we to conclude that there was a shift in the Commission's rationale between the Tentative Decision and the Third R&O, AMT/DSST cannot seriously claim that they were prejudiced by such shift. The Third R&O explicitly placed AMT/DSST on notice that the Commission found that AMT/DSST had not established that their proposal was technically feasible. AMT/DSST had a full and fair opportunity to raise any objections to this conclusion in their petition for reconsideration of the Third R&O. The Commission fully addressed these concerns on reconsideration. Reconsideration Order, 9 F.C.C.R. at 7807 p 13.
 
 
 33
 AMT/DSST further argue that the denial of their preference request was founded on factual errors and was thus arbitrary. Specifically, the Commission concluded that AMT/DSST's proposal was not feasible despite "extensive record evidence" to the contrary. Apparently, the evidence to which AMT/DSST refers is the technical analysis brought to the Commission's attention in AMT/DSST's petition for reconsideration. That analysis discussed the development of commercial spread spectrum equipment by Cylink, DSST's parent company, for use in the 900 MHz, 2.4 GHz, and 5.7 GHz Industrial, Scientific, and Medical bands ("ISM bands").
 
 
 34
 The Commission did not disregard this evidence. Rather, it found the evidence "inconsistent with [AMT/DSST's] previous assertions that they were developing new broadband PCS equipment." Reconsideration Order, 9 F.C.C.R. at 7808 p 14. As the Commission explained, "if AMT/DSST's proposed system is based on Cylink's equipment, it does not qualify as an innovation worthy of a broadband PCS pioneer's preference." Id. In other words, the Commission concluded that even if the evidence established the feasibility of AMT/DSST's proposal, the proposal would be rejected because the evidence also demonstrated that AMT/DSST's proposed technology was adapted from technology that Cylink had developed for use in other bands.
 
 
 35
 However, the Commission's adaptation rationale is unsatisfying because, as discussed above, it was not applied consistently to all pioneer's preference applicants. Therefore, we are compelled to conclude that the Commission has failed to respond to record evidence concerning the technical feasibility of AMT/DSST's proposal. We would be troubled by this failure to address record evidence were lack of technical feasibility the sole basis for the Commission's decision to reject AMT/DSST's pioneer's preference application. The Commission, however, also denied AMT/DSST's preference request on the alternative ground that it was incompatible with the spectrum scheme adopted by the Commission. Id.
 
 
 36
 AMT/DSST attack this incompatibility rationale as well, arguing that the Commission granted pioneer's preferences to applicants with equally incompatible proposals. According to AMT/DSST, their preference request was denied because they requested only 5 MHz of spectrum space rather than the full 30 MHz the Commission proposed. By contrast, other parties to these proceedings requested more or less than 30 MHz, yet they received preferences. AMT/DSST's argument is without merit. The Commission awarded preferences to other applicants who proposed "spread spectrum systems" at varying band widths. AMT/DSST, however, proposed a different type of system altogether--an "open architecture spectrum plan." [322 U.S.App.D.C. 276] Id. at 7807 p 8. Given that AMT/DSST proposed a different type of system than other preference applicants, AMT/DSST cannot complain of the disparate treatment they received.
 
 3. Viacom
 
 37
 In its Third R&O, the Commission rejected Viacom's proposal on the ground that it was not innovative, but rather was a "compilation[ ] of existing technologies." 9 F.C.C.R. at 1373 p 301. According to Viacom, this explanation is inadequate in that it does not explain why compilations are not innovative or state what existing technologies Viacom's proposal combined. Viacom further argues that the Commission acted arbitrarily by treating Viacom's proposal differently than APC's despite the fact that the proposals were similar.
 
 
 38
 As a general rule, "[t]he filing of a petition for reconsideration [is] not ... a condition precedent to judicial review of any [Commission] order" unless one plans to raise on appeal "questions of fact or law upon which the Commission ... has been afforded no opportunity to pass." 47 U.S.C. § 405(a)(2). Interpreting this provision, we have held that in order to question on appeal the adequacy of the FCC's explanation of its decision, a party must first present its concerns to the Commission so that the agency is afforded an opportunity to cure any defect. See United States v. FCC, 707 F.2d 610, 617, 619 (D.C.Cir.1983).
 
 
 39
 In response to the Commission's Tentative Decision, Viacom filed comments asserting that it and APC were "equally deserving" of pioneer's preferences. See Viacom Comments in Response to the Commission's Tentative Decision at 16. However, Viacom did not demonstrate the similarity of its proposal to that of APC by comparing the two. Viacom's comments also contained a passing reference to the Commission's failure to explain its decision. This statement, however, was far too vague to afford the Commission an opportunity to cure any defect in its order. When the Commission issued its Third R&O rejecting Viacom's preference request on the same grounds advanced in the Tentative Decision, Viacom did not petition for reconsideration. As a result, Viacom failed to raise its claims before the Commission clearly. Therefore, we will not consider them on appeal.
 
 4. Freeman
 
 40
 In its Tentative Decision, the Commission recommended that Freeman's preference request be denied for lack of technical feasibility. 7 F.C.C.R. at 7805 p 25. In response, Freeman filed four progress reports with the Commission detailing Freeman's experimentation on its proposed technology. Despite these progress reports, the Commission denied Freeman's preference request in the Third R&O, citing only the fourth progress report in support of the conclusion that Freeman had not finished testing its proposed technology and thus had not demonstrated its technical feasibility.9 F.C.C.R. at 1365 p 221 & n.249.
 
 
 41
 Freeman argues that the Commission failed to consider the third progress report in rejecting its proposal, and, by failing to consider it, erroneously concluded that the proposal was not feasible. Freeman concedes that it did not bring this alleged error to the attention of the Commission. Nonetheless, Freeman argues that the claim was preserved for appeal simply by filing the third progress report.
 
 
 42
 If a party to an FCC proceeding believes that the Commission has failed to address certain record evidence, § 405 requires that the party bring the matter to the attention of the agency before proceeding to court. Action for Children's Television v. FCC, 906 F.2d 752, 754-55 (D.C.Cir.1990). By failing to raise its failure to comment claim in a petition for reconsideration, Freeman denied the Commission the opportunity to consider the claim in the first instance and correct any error. Rogers Radio Communication Servs., Inc. v. FCC, 593 F.2d 1225, 1229 (D.C.Cir.1978). Its claim is therefore waived.
 
 
 43
 Freeman also argues that the Commission acted arbitrarily in that it treated Freeman differently than other similarly situated pioneer's preference applicants. It points particularly to the successful applications [322 U.S.App.D.C. 277] of Cox and Omnipoint. Freeman again concedes that it failed to raise this claim in a petition for reconsideration. It argues, however, that a petition was unnecessary because it would have been "futile," as demonstrated by the fact that the Commission, on appeal, takes a position on the merits contrary to that of Freeman.
 
 
 44
 We have held that "section 405 ... contains the traditionally recognized exceptions to the exhaustion doctrine." Omnipoint Corp. v. FCC, 78 F.3d 620, 635 (D.C.Cir.1996) (internal quotations omitted). Therefore, "a reviewing court may consider arguments where issues by their nature could not have been raised, or would have been futile, to raise before the agency." Id. Freeman, however, has failed to establish that it would have been futile to present its disparate treatment claim to the agency. If futility could be established by the mere fact that the Commission opposes a petitioner's position on appeal, then futility could always be demonstrated and the requirements of § 405 would be eviscerated. Because Freeman failed to raise its disparate treatment claim before the Commission and because Freeman has not demonstrated that it would have been futile to do so, the claim is waived.
 
 5. ACT
 
 45
 ACT argues that the Commission erroneously considered its preference request in the narrowband, rather than broadband proceeding. The Commission responds that ACT failed to raise this miscategorization claim in a timely petition for reconsideration of the First R&O in which the Commission denied ACT a narrowband preference. Accordingly, the Commission argues, ACT's claim is waived.
 
 
 46
 As discussed above, Section 405 requires that a petition for reconsideration be filed if one plans to raise on appeal issues the Commission has not had an opportunity to address. The time period for filing a petition for reconsideration is "thirty days from the date upon which public notice is given of the order ... complained of." 47 U.S.C. § 405(a). ACT filed its petition for reconsideration of the narrowband proceeding 103 days after the Commission issued the First R&O rejecting ACT's preference request. This petition was plainly untimely.
 
 
 47
 ACT claims that the Commission's notice of proposed rulemaking, Amendment of the Commission's Rules to Establish New Personal Communications Services: Notice of Proposed Rulemaking and Tentative Decision, 7 F.C.C.R. 5676 (1992) [hereinafter Notice], misled it into believing that its proposal would be considered in the broadband proceeding. Interestingly, ACT fails to cite to the portion of the Notice that was allegedly misleading. In fact, the Notice explicitly stated that it considered CT-2--which formed the basis for ACT's preference request--to be a "narrowband service[ ]." Id. at 5733 p 142. If ACT was truly misled by the Notice, it has not explained why.
 
 
 48
 While we have held that even late filed petitions should be considered by an agency "where the late filing is in some sense attributable to a procedural violation by the Commission," Gardner v. FCC, 530 F.2d 1086, 1091 (D.C.Cir.1976), the FCC bears no blame for ACT's tardiness in this case. From the outset of these proceedings, the Commission stated that CT-2 service would be considered in the narrowband proceeding. In the Tentative Decision, the Commission stated explicitly that ACT's proposed CT-2 service was a candidate for a "narrowband PCS" preference. 7 F.C.C.R. at 7806 p 27. Several months later, when the Commission issued its First R&O addressed to narrowband pioneer's preference requests, ACT's CT-2 preference proposal was denied. 8 F.C.C.R. at 7176 p 82.
 
 
 49
 In the end, ACT virtually concedes that the real reason for its tardiness was not the Commission's Notice, but rather the fact that ACT "was in between communications counsel" at the time the petition was due. Petitioner's Brief at 36. But difficulties with lawyers do not absolve one of responsibility for complying with the statutory filing deadline. See Virgin Islands Tele. Corp. v. FCC, 989 F.2d 1231, 1237 (D.C.Cir.1993). ACT alone was responsible for its failure to file a timely petition for reconsideration. Because a timely petition was not filed, the Commission was denied the opportunity to consider [322 U.S.App.D.C. 278] ACT's miscategorization claim. Therefore, we are precluded from considering that claim.
 
 C. Ex parte Contact Claims
 1. QUALCOMM
 
 50
 QUALCOMM maintains that the Commission relied on an improper ex parte contact by Omnipoint in deciding to reject QUALCOMM's pioneer's preference request. A written ex parte contact is defined by the FCC as "[a]ny communication directed to the merits or outcome of a proceeding" that is "made to decision-making personnel but ... not served on the parties to the proceeding." 47 C.F.R. § 1.1202(a), (b) (emphasis in original). Under FCC rules as interpreted by the Commission, pioneer's preference proceedings are restricted proceedings in which ex parte contacts are not permitted. Pioneer's Preference Order, 6 F.C.C.R. at 3493 p 42. Nonetheless, in August 1993, Omnipoint filed with the Commission a report (the "August Report") that was critical of QUALCOMM's pioneer's preference proposal. Omnipoint did not serve the August Report on QUALCOMM or any other party to the pioneer's preference proceeding.
 
 
 51
 We note at the outset that there has been no finding by the Commission that the August Report violated the ex parte contact rules. The Commission refused to address the issue on reconsideration despite repeated requests from QUALCOMM that it do so and assurances from the FCC's Managing Director and General Counsel that the matter would be addressed. While the Commission concedes that the August Report was filed with the Commission but not served on the other parties to the pioneer's preference proceeding, we do not know whether the Report reached "decision-making personnel." See 47 C.F.R. § 1.1202(b) (defining ex parte contacts as those "made to decision-making personnel"); see also Press Broad. Co. v. FCC, 59 F.3d 1365, 1369 (D.C.Cir.1995) (noting that "an improper attempt to influence an adjudication is not a concern if it does not reach the ultimate decision maker"). Because the Commission failed to make the requisite findings, we must assume for purposes of considering QUALCOMM's claim that the August Report constituted an improper ex parte contact.
 
 
 52
 When reviewing allegations of ex parte contacts, we ask whether the contacts " 'irrevocably tainted' " the agency's decision-making process so as to make the " 'ultimate judgment of the agency unfair.' " Press Broad., 59 F.3d at 1369. Several factors should inform this analysis, including
 
 
 53
 the gravity of the ex parte communications; whether the contacts may have influenced the agency's ultimate decision; whether the party making the improper contacts benefited from the agency's ultimate decision; whether the contents of the communications were unknown to opposing parties, who therefore had no opportunity to respond; and whether vacation of the agency's decision and remand for new proceedings would serve a useful purpose.
 
 
 54
 Professional Air Traffic Controllers Org. v. Federal Labor Relations Auth., 685 F.2d 547, 565 (D.C.Cir.1982).
 
 
 55
 In this case, the ex parte contact was quite serious in that the August Report contained a direct attack on the feasibility of QUALCOMM's proposed technology. See August Report at 8. Moreover, the Commission cited the August Report in the Third R&O. 9 F.C.C.R. at 1346 p 56 & n. 68. Further, the August Report was not served on opposing parties, thus denying QUALCOMM and the other preference applicants an opportunity to respond to Omnipoint's criticisms. Still further, the party making the ex parte contact, Omnipoint, benefited from the agency's ultimate decision in that it received a pioneer's preference. These facts all tend to indicate that the ex parte contact tainted the Commission's decision.
 
 
 56
 There is, however, one other fact that forces us to conclude that the ex parte contact was harmless. The August Report argued that QUALCOMM's proposed technology was not feasible. In its Third R&O, the Commission reached the exact opposite conclusion, explicitly finding that QUALCOMM's "equipment appears viable for the provision of PCS services." 9 F.C.C.R. at 1370 p 266. As a result, we conclude that the Report did not taint these proceedings.
 
 
 57
 [322 U.S.App.D.C. 279] 2. ACT
 
 
 58
 Finally, ACT alleges that the Commission's pioneer's preference application process was tainted by numerous ex parte contacts occurring throughout the proceedings. The Commission contends that we should not reach ACT's ex parte claim because it was not raised before the Commission. We agree with the Commission. As discussed above, ACT failed to file a timely petition for reconsideration raising this ex parte contact claim. Nor was the claim raised in ACT's comments filed in response the Commission's Tentative Decision. Section 405 of the Communications Act requires that claims be presented to the Commission before they are brought in this court. Because ACT's ex parte contact claim was never raised before the FCC, we are barred from considering it.
 
 III. Conclusion
 
 59
 For the foregoing reasons, we grant QUALCOMM's petition for review and deny those of the remaining petitioners.