**WATERWAY COMMUNICATIONS SYSTEMS, INC., Petitioner,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

**Riverphone, Inc., Intervenor.**

No. 87–1488.

United States Court of Appeals, District of Columbia Circuit.

Argued May 2, 1988.

Decided July 5, 1988.

As Amended Sept. 21, 1988.

Martin W. Bercovici, with whom Susan J. Pisner, Washington, D.C., was on the brief, for petitioner.

Gregory M. Christopher, Counsel, F.C.C., for respondents. Diane S. Killory, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, John E. Ingel, Robert L. Cook, Counsel, F.C.C., Robert B. Nicholson and Laura Heiser, Attys., Dept. of Justice, were on the brief, for respondents.

Anne P. Jones and Robert J. Miller, Washington, D.C., entered appearances for intervenor Riverphone, Inc.

Before STARR and WILLIAMS, Circuit Judges, and WEIGEL,* Senior District Judge.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

Waterway Communications System, Inc. ("Watercom"), a provider of ship-to-shore telecommunications, appeals the Federal Communications Commission's order rejecting its petitions to deny certain license applications of a competitor, Radio Television of Louisiana, Inc. ("RTL"). We dismiss for want of jurisdiction. The Commission's rejection of Watercom's petitions to deny the RTL license applications was not an appealable order; its ultimate grant of the RTL applications was appealable, but Watercom did not file its petition for review in this court within the 30–day statutory window following the grant.

I.

In the late 1970s Watercom developed technology for an "Automated Maritime Telecommunications System" or "AMTS." AMTS represents a leap ahead of prior systems, which did not allow customer dialing and which required a caller from shore to know the location of the ship he wished to call and the nearest public coastal station. Watercom's development and implementation of the AMTS technology threatened the interests of firms holding licenses for stations operating manual systems. An affiliated group of these licensees, of which RTL is a member, unsuccessfully contested Watercom's applications for frequencies on which to run an AMTS network. Watercom counterattacked on two fronts. First, it asked the Commission to investigate the conduct of RTL and its affiliates (especially Riverphone, Inc.), with an eye to imposition of sanctions. Second, it petitioned to deny several of RTL's pending public coast license applications on the theory that character flaws exhibited by members of its corporate family in their various challenges to Watercom should disqualify it from receipt of any FCC licenses.

On January 15, 1987 the Commission issued an order rejecting both aspects of Watercom's counterattack. Its disposition of the generalized request for sanctions, however, is not before us; Watercom has

* Of the U.S. District Court for the Northern District of California, sitting by designation pursuant to 28 U.S.C. § 294(d).

limited its appeal to the Commission's treatment of its petitions to deny RTL's license applications. Reply Brief at 2–10; cf. *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). Viewing the RTL group's actions in the context of the entire record, a "record ... replete with rancorous and *ad hominem* pleadings," *Complaint of Waterway Communications System, Inc. against Riverphone, Inc.*, 2 FCC Rcd 241 (Joint Appendix (J.A.) 485), the Commission judged it innocent of material wrongdoing. Finding a hearing unnecessary, it rejected the petitions to deny and directed its staff to "process [the RTL] filings in the regular course of business." *Id.* On August 17, 1987, the Commission denied Watercom's petition for reconsideration of this decision. *Complaint of Waterway Communications System, Inc. against Riverphone, Inc.*, 2 FCC Rcd 5012, J.A. 574.

On September 14, 1987, Watercom filed for review in this court pursuant to § 402 of the Federal Communications Act, 47 U.S.C. § 402 (1982). More than two weeks later, on October 2, the Commission's staff, acting on delegated authority, granted the RTL license applications.[1]

## II.

There appear to be two ways of viewing Watercom's appeal to this court. The appeal may be from the Commission's denial of Watercom's petition to deny the RTL licenses, i.e., its decision that Watercom's challenges to the RTL applications did not warrant a hearing. That petition reached the end of the road when the Commission denied Watercom's petition for reconsideration on August 17, 1987. But, for the reasons discussed below and despite some suggestions to the contrary in our cases, the Commission's decision lacks finality and is not appealable.

On the other hand, this case may instead be characterized as a challenge to the grant of the RTL licenses on October 2, 1987. Commission orders granting radio licenses plainly are appealable under 47 U.S.C. § 402(b). But Watercom's September 14, 1987 filing in this court did not fall within the 30–day jurisdictional window allowed by 47 U.S.C. § 402(c).[2]

### A. Rejection of Watercom's Petitions to Deny

■ Jurisdiction for review of FCC licensing-related decisions is governed by § 402(b). § 402(b)(1)–(4) provide jurisdiction for appeals by parties affirmatively seeking Commission authorization, mostly described as "applicant[s]" for one thing or another; subsection (1) allows appeal by "any applicant for a ... station license, whose application is denied by the Commission." § 402(b)(6) turns to the other side and authorizes appeal for persons situated as is Watercom—"any ... person who is aggrieved or whose interests are adversely affected by any order of the Commission *granting or denying* any application described in paragraphs (1)–(4)." (Emphasis added.) On its face, therefore, it appears that relief for Watercom under § 402(b) requires as a trigger the grant or denial of a license application.

Although the Commission order rejecting Watercom's Petitions to Deny removed an impediment to the Commission's eventual grant of the RTL licenses, the order was not itself a final license grant. Nor did it irrevocably commit the Commission to granting the RTL licenses. In the denial the Commission directed its staff to "process" the RTL filings "in the regular course of business." This left the staff to assess RTL's technical submissions and make the statutorily required public interest finding. To treat the rejection of Watercom's petitions to deny as *de facto* a

---

1. Watercom has also petitioned to deny the application of Riverphone Inc., an RTL affiliate recently created to exploit the new AMTS technology, for a band of AMTS frequencies (File No. 854213 (Dec. 31, 1986)). J.A. 542. The Commission has not yet spoken to this petition to deny, and it is not before us.

2. The Licensing order also was a staff order and thus was not subject to judicial review in the absence of an application for review by the Commission. *See* 47 U.S.C. § 155(c)(7).

final decision to grant the RTL applications, as Watercom urges, would entangle the courts in disputes that have at least some chance of completely disappearing.

Resolution of petitions to deny a license application characteristically revolve around the Commission's duty to hold a hearing when the petition raises a sufficient question about the license application. *See* 47 U.S.C. § 309(e). As Watercom asserts that its petitions to deny raised such an issue, it suggests that the order rejecting the petitions must be appealable. But the Commission's violation of § 309, if its January and August 1987 decisions be such, can create a reviewable issue without constituting an appealable order. Watercom's impression to the contrary may well have derived from its reading some of our prior cases that loosely, and somewhat misleadingly, characterize appeals of the Commission's licensing decisions as appeals of the Commission's *concurrent* rejection of the appellants' petitions to deny. *See, e.g., Metropolitan Television Co. v. United States,* 221 F.2d 879, 880–81 (D.C.Cir.1955); *Citizens for Jazz on WRVR, Inc. v. FCC,* 775 F.2d 392, 393 (D.C.Cir.1985). The cases are properly characterized as appeals of Commission licensing decisions in which the primary issue on appeal was whether the Commission had violated the standards established by § 309(e). *Cf. Stone v. FCC,* 466 F.2d 316, 321 (D.C.Cir.1972); *Columbus Broadcasting Coalition v. FCC,* 505 F.2d 320, 322 (D.C.Cir.1974). None of these cases even considered whether the Commission's § 309 decisions could be independently appealable.

In a post-argument filing Watercom asserts that *Fidelity Television, Inc. v. FCC,* 502 F.2d 443 (D.C.Cir.1974), and *Committee for Open Media v. FCC,* 543 F.2d 861 (D.C.Cir.1976), are binding precedent for its view that a Commission order rejecting a § 309(d) petition to deny without a hearing is independently appealable. We disagree. In *Fidelity Television* the court held final and appealable under § 402(b) a Commission decision renewing RKO General's Los Angeles TV station but reserving its authority to upset that renewal if the results of an inquiry then pending in Boston (and relating to allegations of anticompetitive

behavior by RKO) so dictated. The Commission's decision stated that "the application of RKO General, Inc. . . . IS DEEMED TO BE GRANTED, and . . . the application of Fidelity Television, Inc. . . . IS DEEMED TO BE DENIED, subject to whatever action may be deemed appropriate following resolution of the matters" raised in the Boston proceeding. *Id.* 502 F.2d at 448. So far as appears, the qualification of the decision's finality was no more than what is inevitable under 47 U.S.C. § 312(a)(2), which authorizes the Commission to revoke licenses "because of conditions coming to the attention of the Commission which would warant it in refusing to grant a license or permit on an original application."

*Commission for Open Media v. FCC* is closer but not on the mark. It arose from an objection by the Commission for Open Media ("COM") to the FCC's decision to renew Chronicle Broadcasting's TV license. On November 1, 1971 COM petitioned to deny Chronicle's application for renewal. The FCC rejected the substance of this petition in its May 9, 1973 decision to grant renewal. But that decision did not specifically mention the petition to deny, and the Commission formally rejected that petition only on May 30, 1973. In other words, what we would normally think of as the final decision—license renewal—*preceded* formal disposition of what we might think of as an interlocutory motion.

COM on June 23, 1973 filed a petition for reconsideration with the Commission. Under 47 U.S.C. § 405, this was timely as to the May 30 order, untimely as to that of May 9. On October 15, 1973, while this petition was pending, COM appealed to this court. Besides challenging the FCC's rejection of its initial petition, it sought relief against the Commission's allegedly unreasonable delay in failing to act on its petition for reconsideration. (Although filing a petition for reconsideration was not a prerequisite of seeking judicial review, pendency of the petition rendered the Commission's decision non-final.) Finally, on January 4, 1974, the FCC denied COM's petition.

The court found that the FCC denial of reconsideration mooted COM's delay com-

plaint. Turning to the merits claim, the court said that COM's motion for reconsideration tolled the statute of limitations for appeal from the May 9 order, and that that order was appealable. 543 F.2d at 864–65 n. 20. But as more than 30 days had elapsed from the May 9 order to COM's petition for reconsideration, that did not solve the limitations problem. The court proceeded to say that the May 30 order "was ancillary to the Commission's licensing authority, and was likewise appealable." *Id.* Whatever the purpose of the remark, it cannot mean that any decision ancillary to a final decision is on that account final; such a view would extinguish the requirement of finality. (The cases cited by the court, *Metropolitan Television Co. v. United States,* 221 F.2d 879 (D.C.Cir. 1955), and *Radio Station WOW, Inc. v. FCC,* 184 F.2d 257 (D.C.Cir.1950), do not support that view.)

Thus, read consistently with ordinary notions of finality, *COM* appears to be mainly a response to the FCC's cart-before-the-horse move—granting the license renewal before rejecting the petition to deny. In essence it says that when the Commission disposes of a matter once, and then issues a mopping-up order explicitly rejecting a petitioner's claim, the petitioner may treat the latter as the final, final order. Such a proposition does no good for Waterway.

Finally, petitioner notes that Commission rules prevent the entertainment of motions to reconsider interlocutory appeals. *See* 47 C.F.R. § 1.106(a) (1987). As the Commission clearly did entertain its motion to reconsider, it would evidently have us infer that the Commission must have regarded its denial of the petition to deny as final. *See* May 5, 1988 letter submitted under Rule 28(j) of the Federal Rules of Appellate Procedure. Presumably so; but the Commission's characterization of its decision as final for its purposes does not make it so for ours. *See Spanish Int'l Broadcasting Co. v. FCC,* 385 F.2d 615, 625–26 (D.C.Cir. 1967).

**B.** *Approval of the RTL License Applications*

■ In view of the confusion engendered by the Commission's consolidated treatment of Watercom's requests for enforcement against Riverphone and for denial of the RTL license applications, one can perceive an equitable claim in favor of treating Watercom's September 14, 1987 petition for review here as an appeal of the Commission staff's October 2, 1987 approval of those applications. Even if we thought the equitable claim strong, *compare Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984), however, our previous decisions preclude this course. The time limit imposed by 47 U.S.C. § 402(c) is jurisdictional, i.e., if the appeal is not filed in accordance with the statutory terms, "it *must* be dismissed." *National Black Media Coalition v. FCC,* 760 F.2d 1297, 1298 (D.C.Cir. 1985) (emphasis added).

Here the appeal was filed 18 days before public notice of the RTL license grant. 47 U.S.C. § 402(c) requires that notice of appeals taken pursuant to § 402(b) be "file[d] ... with the court within thirty days from the date upon which public notice is given of the decision or order complained of." We have already construed an identically phrased time limit as creating only a "window," i.e., a period for filing restricted on both ends.

In *Western Union Telegraph Co. v. FCC,* 773 F.2d 375 (D.C.Cir.1985), we considered the requirement of 28 U.S.C. § 2344 (1982) that appeals under 28 U.S.C. § 2342 be filed "within 60 days after ... entry" of the order appealed. The petition for review in question had been filed one week after release to the public, but six days before publication of the contested order in the Federal Register. The panel acknowledged that the statutory time limit could be viewed as either establishing a "deadline" or a "window." *Id.* at 377. It concluded that both the language of the statute and the interest in establishing clear and certain jurisdictional boundaries weighed heavily in favor of the latter approach. *Id.* at 377–78.

The statutory language at issue here ("within thirty days," 47 U.S.C. § 402(c))

mirrors that construed in *Western Union;* no other factors distinguish the issue here from that faced by the *Western Union* panel. We conclude that we have no power to entertain Watercom's appeal.

We note that some of the rigor behind our rejection of premature appeals has derived from the fact that 28 U.S.C. § 2112(a) (1982) created a race to the courthouse where timely appeals were filed in different courts of appeal with respect to the same agency order. If time limits were construed as deadlines only, parties would file progressively earlier, necessitating judicial invention of *some* threshold. *See Western Union,* 773 F.2d at 378. The race has since been replaced by a lottery, Act of Jan. 8, 1988, Pub.L. No. 100–236, 101 Stat. 1732, a change that argues for some relaxation of existing barriers. *Compare Sacks v. Rothberg,* 845 F.2d 1098 at 1099 (D.C. Cir.1988) ("[A]n appeal taken prematurely effectively ripens and secures appellate jurisdiction when the district court's judgment becomes final prior to disposition of the appeal"). But *Western Union* itself did not actually involve a race, so the court clearly did not regard the absence of a race as justifying mitigation of the rule. Nor was it explicitly founded upon the existence of the race problem as a general matter. Accordingly, *Western Union* remains the law of this circuit.

We dismiss the petition.