COALITION FOR NONCOMMERCIAL MEDIA, Petitioner

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents

Western New York Public Broadcasting Association, Intervenor

No. 00–1253.

United States Court of Appeals, District of Columbia Circuit.

Argued March 22, 2001.

Decided June 1, 2001

Jared S. Sher argued the cause for petitioner. On the briefs were David E. Honig, John C. Quale and Mark C. Del Bianco.

James M. Carr, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were Christopher J. Wright, General Counsel, Daniel M. Armstrong, Associate General Counsel, A. Douglas Melamed, Acting Assistant Attorney General, U.S. Department of Justice, Robert B. Nicholson and Adam D. Hirsh, Attorneys. Catherine G. O'Sullivan, Attorney, entered an appearance.

Robert A. Woods and Malcolm G. Stevenson were on the brief for intervenor Western New York Public Broadcasting Association. Lawrence M. Miller entered an appearance.

Before: EDWARDS, Chief Judge, WILLIAMS and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

The Coalition for Noncommercial Media, a nonprofit organization, challenges a Federal Communications Commission order swapping the status of two television channels licensed to the Western New York Public Broadcasting Association ("the Association"). As a result of the swap, Channel 17, previously unreserved, became reserved for non-commercial use and Channel 23, previously reserved, ceased to be. (The Commission allots a digital channel to accompany each analog channel,[1] and its order effected similar switches for the Association's digital channels.) Pinning standing to the status of its members as viewers of these channels, the Coalition raises a host of claims. We find the appeal timely: The Coalition's appeal properly falls under 47 U.S.C. § 402(a) and its 60–day limit (see 28 U.S.C. § 2344), rather than under § 402(b) and its 30–day limit (see § 402(c)), as the Commission urges. But because the issues that the Coalition preserved for review lack merit, we affirm.

\*   \*   \*   \*   \*   \*

The Commission began assigning television channels to geographic regions almost fifty years ago. To encourage the development of educational programming, the Commission reserved some channels for noncommercial use, identifying such channels with an asterisk in what is now called the Table of Allotments. See *In re Amendment of Section 3.606 of the Commission's Rules and Regulations*, 41 F.C.C. Reports 148, 158–64, 228 & n. 60 ¶¶ 33–49, 253(a) (1952); see also 47 CFR § 73.606.

To modify a channel assignment, a broadcast licensee must apply to the Com-

---

**1.** See *In re Advanced Television Systems and Their Impact upon the Existing Television Broadcast Service*, 13 F.C.C.R. 7418, 7517–18 ¶¶ 291–92, 1998 WL 72379 (1998), *aff'd, Community Television, Inc. v. FCC*, 216 F.3d 1133 (D.C.Cir.2000); see also 47 CFR § 73.622(a).

mission, normally thereby exposing itself to competing license applications. In the case of some relatively simple exchanges, however, the Commission has taken the view that the application of this general precept might unjustifiably discourage beneficial exchanges. To address this concern, it adopted in 1986 a rule expressly permitting a commercial and a noncommercial broadcaster to petition to exchange channels without facing competing applications for the licenses. See *In re Amendments to the Television Table of Assignments to Change Noncommercial Educational Reservations*, 59 Rad. Reg.2d (P & F) 1455, 1986 WL 291350 (1986); see also 47 CFR § 1.420(h).

The Association operates two noncommercial television stations in Buffalo, New York—WNEQ–TV on Channel 23, which was reserved for noncommercial educational use, and WNED–TV on Channel 17, which was unreserved. In May 1998, the Association petitioned for a rulemaking to amend the Table of Allotments to switch the two channels' status. See Petition for Rule Making, Joint Appendix ("J.A.") at 1. The Association stated that it would provide "a significantly enhanced programming operation at Station WNED–TV", which it claimed was "the more powerful of the two stations", and would "derive substantial new and necessary financial support for an endowment fund for its Station WNED–TV operations through assignment of its facility on unreserved Channel 23 to a commercial entrepreneur." *Id.* at 3–4. The Commission's Mass Media Bureau issued a Notice of Proposed Rule Making on the Association's proposal and received comments from the Coalition, among others. Finding that the proposed change in reservation status would improve noncommercial service in Buffalo and would not eliminate any noncommercial channel reservations, the Bureau granted the petition and modified the television licenses under § 316(a) of the 1934

Communications Act to reflect the change in July 1999. See *In re Amendment of Section 73.606(b), Table of Allotments, Television Broadcast Stations and Section 73.622(b), Table of Allotments, Digital Television Broadcast Stations (Buffalo, New York)*, 14 F.C.C.R. 11,856, 11,859, 11,861–62, 11,863 ¶¶ 9, 15, 19, 1999 WL 528271 (Mass Media Bur.1999) ("*Bureau Order*"). The Commission denied the Coalition's application for review. See *In re Amendment of Section 73.606(b), Table of Allotments, Television Broadcast Stations and Section 73.622(b), Table of Allotments, Digital Television Broadcast Stations (Buffalo, New York)*, FCC 00–130, 2000 WL 390616 (Memorandum Opinion and Order April 19, 2000), J.A. at 188 ("Order"). The Coalition now seeks judicial review.

\* \* \* \* \* \*

█ The Commission published its order on May 4, 2000. See 65 Fed.Reg. 25,865 (2000). The Coalition filed its petition for review on June 15, 2000. Thus the Coalition's petition was timely if it belongs under § 402(a)'s 60–day deadline but not if it belongs under § 402(b)'s 30–day limit. The Coalition's opening brief oddly asserted that our jurisdiction depended on § 402(b)(6), a point on which the Commission pounced. But we decide for ourselves how the petition should be characterized. See *Freeman Engineering Associates, Inc. v. FCC*, 103 F.3d 169, 177 (D.C.Cir.1997).

For § 402(b)(6) to apply, the Coalition must show that it "is aggrieved or [its] interests are adversely affected by any order of the Commission granting or denying any *application* described in paragraphs (1) to (4) and (9) of this subsection." 47 U.S.C. § 402(b)(6) (emphasis added); see also *Waterway Communications Systems, Inc. v. FCC*, 851 F.2d 401, 403 (D.C.Cir.1988). The Commission's order, however, neither grants nor denies

any application because the Association did not submit one; the Association petitioned for a rulemaking to modify the relevant tables reflecting channel assignments. It did not seek a modification of its licenses.

The matter is complicated by the fact that, even without a request, the Commission *did* modify the licenses. Had the Association sought the modification, the case would presumably fall under § 402(b)(6), because that subsection cross-references § 402(b)(2), involving applications to modify an "authorization" specified in subsection (1), which includes "station license[s]." This would be true even if the Association did not identify its request as an "application." In fact it made no such request in any form.

But we are still not out of the woods. In *Tomah–Mauston Broadcasting Co. v. FCC*, 306 F.2d 811 (D.C.Cir.1962), we held that a Commission order denying a petition to stay and revoke a party's construction permit to build a radio broadcast station before it went on the air was reviewable under 47 U.S.C. § 402(b)(6) as an order "ancillary" to the grant of the construction permit. *Id.* at 812. In effect the petitioner was directly seeking to reverse the grant. See also *id.* (observing that Commission order was "in substance a re-affirmation of its earlier grant"). But we have never extended *Tomah–Mauston*. In *Freeman Engineering Associates, Inc. v. FCC*, 103 F.3d 169 (D.C.Cir.1997), because grant of a "pioneer's preference" came close to assuring the grantee a license, the Commission claimed that appeal from such a grant belonged under § 402(b). Distinguishing *Tomah–Mauston*, we held "that the Commission's denial of a pioneer's preference is neither a denial of a license nor is it ancillary to such," stressing that to actually receive the grant the pioneer must also be "otherwise qualified." *Id.* at 177–78. Thus even an application that strong-

ly foreshadows the grant of a § 402(b) application is not enough. But see *WHDH, Inc. v. United States,* 457 F.2d 559, 561 (1st Cir.1972) (finding § 402(b) applicable under *Tomah-Mauston* to appeal attacking grant of "program test authority," which "is a step short of the granting of a station license"). That the Commission leapt forward and on its own hook eliminated the need for such an application does not create an application where none was made. We thus find the Coalition's appeal proper under § 402(a) and timely under the 60–day limit.

\*    \*    \*    \*    \*    \*

█   The Coalition makes several arguments before us that it did not raise with the Commission. See 47 U.S.C. § 405. Section 405(a) generally dispenses with any need for a petition for reconsideration with the Commission, but *not* where the party seeking review raises a claim "upon which the Commission ... has been afforded no opportunity to pass." Although this exhaustion provision does not require that the "opportunity be afforded in any particular manner, or by any particular party," *Office of Communication of the United Church of Christ v. FCC,* 465 F.2d 519, 523 (D.C.Cir.1972), the argument does have to have been meaningfully raised by someone. See *Washington Ass'n for Television & Children v. FCC,* 712 F.2d 677, 681 (D.C.Cir.1983); *Alianza Federal de Mercedes v. FCC,* 539 F.2d 732, 739 (D.C.Cir.1976).

We find that three of the Coalition's claims have been waived under 47 U.S.C. § 405. First, the Coalition argues that when the Commission swapped the channel reservations in the relevant Tables of Allotments and modified the Association's licenses in the same proceeding, it deviated without explanation from past practice. See *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852–53 (D.C.Cir.1970).

In the Coalition's view this past practice required applicants to file first for an amendment to the Tables of Allotments and then separately to modify their licenses to reflect the change. To support its claim that it made this argument the Coalition cites a number of pages in its application for Commission review, see Reply Br. at 11 n.20, but nothing cited reasonably raises or even suggests this issue. See *Time Warner Entertainment Co. v. FCC*, 144 F.3d 75, 81 (D.C.Cir.1998) ("[W]e ask whether a reasonable Commission *necessarily* would have seen the question raised before us as part of the case presented to it.").

■ Grant Television, Inc., a licensee of station WNYO–TV in Buffalo, New York, did raise this issue—but only before the Mass Media Bureau. See J.A. at 35–38. Grant Television was not a party to the Commission's review. As § 405 requires that the Commission itself—and not merely a Commission bureau—have had an opportunity to pass on the issue, see *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 279 (D.C.Cir.1997), Grant's comments are not enough.

■ To be sure a few sentences of the Commission order made reference, in its background section, to the Mass Media Bureau's disposition of the issue that the Coalition is now raising. Order at ¶ 5, J.A. at 189. But the "mere fact that the Commission discusses an issue does not mean that it was provided a meaningful 'opportunity to pass' on the issue." *Bartholdi*, 114 F.3d at 280; see also *Time Warner*, 144 F.3d at 79–80. Only a discussion offered in response to *someone*'s argument—such as petitioner's, another party's, or a Commissioner's—qualifies. See *Bartholdi*, 114 F.3d at 280. Our reference in *Petroleum Communications, Inc. v. FCC*, 22 F.3d 1164 (D.C.Cir.1994), to instances where the Commission "considered the issue ... on its own motion," *id.* at

1170, appears to be confined to cases where a dissenting commissioner posed the challenge.

The obstacles for the two remaining barred claims are more straightforward. The Coalition itself concedes, Reply Br. at 21 n.42, that it never raised its claim that the Commission's failure to alert interested parties that it might modify the Association's licenses when it changed the relevant Tables of Allotments was a violation of the Administrative Procedure Act's notice requirements. See 5 U.S.C. § 553(b). And the Coalition identifies no place where it objected that the Association's proposal reduced the number of reserved digital channels in Buffalo, New York because the original table placed asterisks next to both Channel 32 and Channel 43 (a superficially valid proposition that the Association, rightly or wrongly, explained as having resulted from a pre-existing typographical error in the original digital Table of Allotments, see Petition for Rule Making, J.A. at 2 n.1). No party made this argument below and the Coalition cannot raise it now.

None of the exceptions to § 405's exhaustion requirement is available for these three claims. See *Washington Ass'n for Television & Children*, 712 F.2d at 681–83. The Commission is not obliged to guess what arguments might be before it; thus we move on without reaching the merits of these claims.

\*    \*    \*    \*    \*    \*

Surviving are the Coalition's objections to the Commission's rejection of two counterproposals that the Coalition had made to the Notice of Proposed Rule Making on the Association's channel-swapping proposal. The first asked the Commission to reserve both of the Association's channels for noncommercial use. The second asked the Commission to reserve all unreserved

stations in the nation that were being used for noncommercial use. See J.A. at 59.

■ The Commission acknowledged that the Mass Media Bureau did not specifically address the first proposal but said that any error was harmless for several reasons. See Order at ¶ 11, J.A. at 191. On appeal, the Coalition's opening brief challenges only the Commission's point that "a third party may not petition for a change in another station's authorization, particularly if the licensee has disavowed an interest in the particular proposed change." *Id.* But the Coalition cites no case or Commission rule that would suggest otherwise—except in cases, see Reply Brief at 16–17 n.31, where a licensee or potential licensee of a nearby channel claimed that an existing license would, in the absence of modification, create interference, and thus mutual exclusivity within the meaning of *Ashbacker Radio Corp. v. FCC,* 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945). Yet the Coalition did not contest the Commission's reading of *Ashbacker* as inapplicable to its proposal until its Reply Brief, and that, as we have said many times, is too late for a new argument. See *United States v. Wilson,* 240 F.3d 39, 45 (D.C.Cir.2001).

■ The Bureau dismissed the second proposal—to impose reserved status on all stations that are in noncommercial use— stating that it "is not mutually exclusive with the Buffalo proposal and is therefore not appropriately filed in this proceeding." *Bureau Order,* 14 F.C.C.R. at 11,856 n. 2. The Commission observed that the issue should be "raised as a general rulemaking, not as an issue to be resolved in an adjudicatory proceeding such as this." Order at ¶ 12, J.A. at 191.

The Commission's dismissal of these two counterproposals was reasonable and adequately explained. See *Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). There is no sense at all in the claim that the Commission's action here is inconsistent with its decision in *In re Deletion of Noncommercial Reservation of Channel *16, 482–488 MHz, Pittsburgh, Pennsylvania,* 11 F.C.C.R. 11,700, 1996 WL 434603 (1996). The proposal there involved a deletion of one of two reserved channels, effecting a net reduction; here there was no such reduction.

The Coalition's petition is

*Denied.*