Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

––––––––

Argued December 4, 2003   Decided January 27, 2004

No. 02-1297

VERNAL ENTERPRISES, INC. AND
LARRY L. SCHRECONGOST,
PETITIONERS

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

––––––––

On Petition for Review of an Order of the
Federal Communications Commission

––––––––

*John M. Pelkey* argued the cause and filed the briefs for petitioners. *Larry L. Schrecongost* entered an appearance.

*Harry M. Wingo, Jr.*, Counsel, Federal Communications Commission, *Robert H. Pate III*, Acting Assistant Attorney General, U.S. Department of Justice, *Robert B. Nicholson*

––––––––

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

and *Andrea Limmer*, Attorneys, *John A. Rogovin*, General Counsel, Federal Communications Commission, and *Daniel M. Armstrong*, Associate General Counsel were on the brief for respondents. *Jane E. Mago*, Assistant General Counsel, *C. Grey Pash, Jr.*, Counsel, and *Adam D. Hirsh*, Attorney, U.S. Department of Justice, entered appearances.

Before: EDWARDS, SENTELLE, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: Petitioners Vernal Enterprises, Inc., and Larry L. Schrecongost, the company's President, seek review of an order of the Federal Communications Commission ("FCC" or "the Commission") denying their request for refund of a $2,335.00 filing fee paid in connection with a permit application for construction of a broadcast station. *See Vernal Enter., Inc.*, 17 F.C.C.R. 14,826 (2002). Vernal was one of a number of mutually exclusive applicants vying for a permit to construct a radio station in Brookville, Pennsylvania. In January 1998, Vernal and the other applicants filed a settlement agreement with the FCC pursuant to which the construction permit was awarded to another applicant. In April 2000, two years after the FCC approved the settlement agreement and dismissed Vernal's application, petitioners requested a refund of the fee paid when Vernal filed its application in 1996.

The Commission denied the refund request by memorandum opinion and order on July 23, 2002. The Commission held that, under the applicable agency policy, application fees would be refunded only to applicants who had not resolved their mutually exclusive applications through negotiated agreements within 180 days of August 5, 1997, and whose pending mutually exclusive applications would therefore be resolved pursuant to the agency's newly implemented competitive bidding process. Petitioners now seek review of the Commission's order, claiming that the agency's denial of the refund request was arbitrary and capricious. 5 U.S.C. § 706(2)(A) (2000).

The Commission first contends that the court is without jurisdiction to hear this case, because petitioners failed to

appeal within the 30 days allowed under 47 U.S.C. § 402(b) (2000). *See* 47 U.S.C. § 402(c). We reject this argument. Petitioners are properly seeking review under 47 U.S.C. § 402(a), and their petition for review was filed within the 60-day limitation applicable to that statutory provision.

The Commission argues, in the alternative, that the agency's enforcement of the disputed fee-refund policy was reasonable and did not violate the arbitrary and capricious standard of the Administrative Procedure Act. We agree. We therefore deny the petition for review.

## I. BACKGROUND

In August 1997, Congress amended § 309(j) of the Communications Act ("the Act") to require the FCC to use competitive bidding (also known as auctions), rather than comparative hearings, in connection with mutually exclusive applications for commercial broadcast authorizations. *See* Balanced Budget Act of 1997, Pub. L. No. 105-33, § 3002(a)(1), 111 Stat. 251, 258-59 (1997). Congress also added a new section to the Communications Act, 47 U.S.C. § 309(*l*), allowing the Commission to determine whether to use competitive bidding or comparative hearings in connection with mutually exclusive applications pending as of July 1, 1997. *See* § 3002(a)(3), 111 Stat. at 260. This new section also provided a 180-day period during which pre-July 1, 1997 applicants who entered into settlement agreements resolving mutual exclusivity would not be subject to FCC rules limiting the amount of settlement payments between applicants. *See id.*

In a notice of proposed rulemaking issued in November 1997, the FCC "tentatively" concluded that the use of auctions to resolve pending comparative licensing cases would "better serve[ ] the public interest than deciding them by comparative hearing . . . ." Implementation of Section 309(j) of the Communications Act – Competitive Bidding for Commercial Broadcast and Instructional Television Fixed Service Licenses, Notice of Proposed Rulemaking, 12 F.C.C.R. 22,363, 22,369-70 ¶ 14 (1997) [hereinafter *Notice of Proposed Rule-*

*making*].  The Commission noted that it was seeking "comment on whether we should continue to use comparative hearings for some or all of these cases."  *Id.* at 22,370 ¶ 14. In conjunction with its tentative decision to subject pending applications to competitive bidding, the Commission also proposed to refund the filing fees paid by applicants who chose not to participate in the auction process.  *Id.* at 22,370-71 ¶ 16.

In August 1998, the FCC issued a report and order implementing its auction authority.  *See* Implementation of Section 309(j) of the Communications Act – Competitive Bidding for Commercial Broadcast and Instructional Television Fixed Service Licenses, First Report and Order, 13 F.C.C.R. 15,920 (1998), *on reconsideration*, Memorandum Opinion and Order, 14 F.C.C.R. 8,724 (1999), *aff'd. mem.*, *Orion Communications, Ltd. v. FCC*, 221 F.3d 196 (D.C. Cir. 2000) [hereinafter *Report and Order*].  The Commission also promulgated a fee-refund policy in conjunction with the *Report and Order*.  The policy provided:

> On or before the date for filing a short-form application, pending applicants in all comparative licensing cases subject to resolution by competitive bidding pursuant to § 309(*l*) may file a pleading disavowing any interest in participating in the auction and seeking the dismissal of their applications.  Once dismissal of any such application is final, we will entertain requests for refunds of any hearing and filing fees actually paid by such applicants.

*Id.* at 15,957 ¶ 102.

In May 1996, Vernal Enterprises, Inc., a closely held corporation owned by Larry L. Schrecongost and his wife, filed an application for a permit to construct a new FM radio station in Brookville, Pennsylvania.  Vernal payed a $2335.00 filing fee in connection with the application.  Several other parties, including Robert Stevens and Renda Radio, Inc., also filled applications to construct a station in the Brookville community.  Because the applicants sought to use the same FM frequency, the Commission was required to decide to whom the construction permit should be awarded.  The

Brookville applications were pending in August 1997 when the relevant amendments to the Communications Act were adopted.

In January 1998, within the 180-day period during which FCC limitations on settlement agreements were waived and over six months before the FCC determined that all pending pre-July 1997 applications would be subject to competitive bidding, Vernal entered into a settlement agreement with the other Brookville applicants. In April 1998, the FCC issued a public notice announcing that, pursuant to the settlement, Renda Radio, Inc. would be awarded the construction permit and all other applications, including Vernal's, would be dismissed. FM Broadcast Settlement Agreements and Applications, 1998 WL 174,855 (Apr. 16, 1998). The dismissals became final in May 1998.

In October 1998, Stevens, who, like Vernal, sought dismissal of his permit application pursuant to the settlement, requested a refund of his filing fee. A staff member of the Commission's Office of Managing Director ("OMD") granted Stevens' request in July 1999, and notice of the refund was released in February 2000. Fee Decisions of the Managing Director, 15 F.C.C.R. 2826, 2829 (2000).

Vernal filed a request for a refund of its filing fee in April 2000. The OMD denied the request in a January 14, 2002 letter order. *See* Letter from Mark A. Reger to Larry S. Schrecongost, *reprinted in* Joint Appendix ("J.A.") 24. The staff letter explained that, in implementing the competitive bidding rules, the FCC had contemplated refunds of filing fees in "circumstances where a permit is ultimately awarded *pursuant to the auction process*, not where a permit is awarded as a result of a settlement agreement among competing applicants." *Id.* at 25 (emphasis in the original). The letter indicated that a 1999 public notice had made the FCC's intention clear and had stated that, "to the extent Settlements contain provisions requesting that the Commission refund previously paid filing fees, those provisions are inconsistent with the Commission's decision in the auction proceedings concerning filing fee refunds." *Id.* at n.2. The staff letter

acknowledged that the OMD had granted a refund request made by another dismissed Brookville applicant and indicated that that decision "was in error." *Id.* at 25.

Petitioners filed an application for review before the Commission on February 13, 2002. Application for Review (File No. BPH-960520MD), *reprinted in* J.A. 27. The Commission issued a memorandum opinion and order on July 23, 2002 denying the application for review. *Vernal Enter., Inc.*, 17 F.C.C.R. 14,826 (2002). Citing to *Wade Communications, Inc.*, 16 F.C.C.R. 20,708 (2001), the FCC explained that the fee-refund policy promulgated in conjunction with the *Report and Order* made it clear that fees would be refunded only "to the remaining pre-July 1, 1997 applicants for licenses or permits who had not resolved their mutual exclusivity through negotiated agreements during the 180-day period . . . and whose pending mutually exclusive applications would therefore be resolved pursuant to our decision to use competitive bidding." *Vernal* 17 F.C.C.R. at 14,827 ¶ 5. The FCC concluded that Vernal, whose application was dismissed pursuant to a settlement agreement entered into during the specified 180-day period and before the Commission's decision to subject all remaining pre-July 1997 applications to auction, was not entitled to a refund. *See id.* The FCC acknowledged that, prior to its decision in *Wade Communications*, staff persons in OMD had granted some fee refunds to parties, like petitioners, who had withdrawn their applications pursuant to settlement agreements entered into before the applications became subject to competitive bidding. *See id.* at 14,827-28 ¶ 6. The FCC explained, however, that *Wade Communications* made it clear that these staff actions were not authorized by the Commission and that they were at odds with agency policy. *See id.* at 14,828 ¶ 6. On September 23, 2002, within 60 days of the issuance of the Commission's order, petitioners filed the instant petition for review.

## II. ANALYSIS

### A. Jurisdiction

As an initial matter, the FCC contends that this court is without jurisdiction to hear this case. The Commission ar-

gues that petitioners incorrectly petitioned for review within the 60-day filing period applicable to 47 U.S.C. § 402(a), rather than seeking review within the 30 days applicable to § 402(b). The FCC's position is unavailing. Petitioners properly pursued their claim under 47 U.S.C. § 402(a), and we consequently have jurisdiction to hear this matter.

Section 402 describes two mutually exclusive channels for the review of FCC decisions. *See Tribune Co. v. FCC*, 133 F.3d 61, 66 (D.C. Cir. 1998); *Friedman v. FCC*, 263 F.2d 493, 494 (D.C. Cir. 1959). Section 402(b) provides for appeal of FCC orders in nine enumerated situations. All but one, which is not relevant here, involve the Commission's licensing authority. For all other final orders of the Commission, § 402(a) provides that review shall be sought "as provided by and in the manner prescribed in Chapter 158 of Title 28." *See* 28 U.S.C. §§ 2341-2351 (2000). Under § 402(b), an appeal must be taken within 30 days of the date of public notice of the order at issue. *See* 47 U.S.C. § 402(c). Section 402(a) petitions for review must be filed within 60 days of the date of public notice. *See* 28 U.S.C. § 2344. Under either provision, an appeal filed out of time "*must* be dismissed" for lack of jurisdiction. *Waterway Communications Sys., Inc. v. FCC*, 851 F.2d 401, 405 (D.C. Cir. 1988) (emphasis in original) (citation and internal quotations omitted).

The FCC admits that the refund order at issue here does not fall within one of the enumerated categories of § 402(b). However, relying primarily on the "ancillary to" rationale of *Tomah-Mauston Broadcasting Co. v. FCC*, 306 F.2d 811 (D.C. Cir. 1962), the agency argues that the order here is so "intimately associated with" the application process as to require review under § 402(b). According to the FCC, the refund order was issued "solely because Vernal filed an application for a construction permit.... The FCC would never have received the fee but for the filing of Vernal's application, and Vernal's application would not have been accepted for filing if it had not been accompanied by the filing fee." Respondents' Br. at 11. The Commission's reliance on the "ancillary to" notion is misplaced. The applicable law simply is not what the FCC suggests.

*National Ass'n of Broadcasters v. FCC*, 554 F.2d 1118 (D.C. Cir. 1976), provides the initial framework for our analysis. There we held reviewable under § 402(a) a variety of fee orders, including those denying refund of "certain filing and grant fees that [were] submitted with various types of applications for grant of license or other authority." *Petitions for Refund of Fees*, 50 F.C.C.2d 730 ¶ 2, *cited in Nat'l Ass'n of Broadcasters*, 554 F.2d at 1123 n.11. *See id.* at 1121 n.1. At least some of the fees at issue in *National Ass'n of Broadcasters* were, like the construction permit fee at issue here, paid in connection with applications described in § 402(b). Nevertheless, the court found that "[t]he statute itself appears quite clear: except for the eight specific cases listed in § 402(b) (none of which concerns refunds or fee assessments), '[*a*]*ny* proceeding to enjoin, set aside, annul or suspend *any order* of the [Federal Communications] Commission under this chapter . . . shall be brought [by a petition for review under 28 U.S.C. § 2342.]' 47 U.S.C. § 402(a). . . ." *Id.* at 1121 n.1 (alterations in original). The court specifically declined to rely on *Tomah-Mauston* to require review under § 402(b), stating:

> [W]e do not believe (nor does any party allege) that the order presented for our consideration here can be considered "ancillary" to one of the actions listed under section 402(b), since the fees assessed were to reimburse the agency for the costs associated with rendering its services (as mandated by 31 U.S.C. § 483a) rather than for a reason connected in any way with the purposes specified in section 402(b).

*Id.*

The FCC argues that the fee order at issue here is distinguishable from the fee orders at issue in *National Ass'n of Broadcasters*, because the fee here was paid in connection with an application for a permit enumerated in § 402(b). In other words, the FCC suggests that none of the fees at issue in *National Ass'n of Broadcasters* was paid in connection with one of the application procedures enumerated in § 402(b). This is plainly wrong. Although the opinion is not

9

entirely clear with respect to all of the matters at issue in the case, there is no doubt that some of the fees at issue in *National Ass'n of Broadcasters* were paid in connection with application procedures enumerated in § 402(b).

In any event, if *National Ass'n of Broadcasters* leaves any doubt over the reach of § 402(b), *Tomah-Mauston* makes clear that a petition for review under § 402(a) is the appropriate channel for judicial review in this case. In that case, "[t]he appellant had sought to have intervenor's construction permit revoked before intervenor could commence operations." *Tomah-Mauston*, 306 F.2d at 812. Relying on two cases involving orders that resolved what, in effect, were requests that the Commission reconsider the grant of various applications enumerated in § 402(b) and a third case involving an order granting a request to allow a broadcast permit to continue in effect pending a decision in a protest filed against that authorization, the court held that the order was "ancillary to" the grant of the construction permit and should be reviewed under § 402(b). *See id.* The decision noted that because the Commission had "considered appellant's petition on its merits ... its order denying the petition was in substance a re-affirmation of [the FCC's] earlier grant" of the construction permit. *Id.* The court also distinguished an earlier decision in which § 402(b) was apparently found not to provide the remedy for appeal on the grounds that "the orders there sought to be reviewed did not grant or deny an application." *Id.*

The order denying the fee-refund request here similarly does not grant or deny an application. Nor does it, in any way, reaffirm or undermine the Commission's decision to grant the construction permit to Renda Radio or otherwise affect Renda Radio's activities with respect to the Brookville permit. Thus, under *Tomah-Mauston*, the refund order cannot be characterized as "ancillary to" an order appealable under § 402(b).

It is also noteworthy that recent decisions of the court have declined to broaden the "ancillary to" rationale of *Tomah-Mauston* to extend the reach of § 402(b) beyond its pre-

scribed boundaries. *See, e.g.*, *Coalition for Noncommercial Media v. FCC*, 249 F.3d 1005 (D.C. Cir. 2001); *Freeman Eng'g Assocs., Inc. v. FCC*, 103 F.3d 169 (D.C. Cir. 1997). In *Freeman*, the court found that the Commission's grant of a "pioneer's preference" was not "ancillary to" the grant of a license, even though "[a] preference 'effectively . . . guarantee[s] the innovating party a license in the new service (assuming it is otherwise qualified) by permitting the recipient of a pioneer's preference to file a license application without being subject to competing applications.'" 103 F.3d at 174 (alterations in original) (quoting Establishment of Procedures to Provide a Preference to Applicants Proposing an Allocation for New Services, 6 F.C.C.R. 3,488, 3,492 ¶ 32 (1991)). Quoting *Waterway Communications*, 851 F.2d at 403, the court explained:

> "[R]elief . . . under § 402(b) requires as a trigger the grant or denial of a license application." The Commission does not grant licenses at the time a pioneer's preference is awarded. Nor does the grant of a preference irrevocably commit the Commission to grant a license. The recipient of a pioneer's preference must still be "otherwise qualified" in order to obtain a license. It therefore appears that our jurisdiction to review a denial of a pioneer's preference application is not governed by § 404(b), but falls within § 404(a).

*Freeman*, 103 F.2d at 177 (citations omitted). Thus, even in a situation in which the order at issue "strongly foreshadow[ed] the grant of a 402(b) application," *Coalition for Noncommercial Media*, 249 F.3d at 1008, we declined to apply the "ancillary to" rationale of *Tomah-Mauston* in the absence of the "trigger[ing] . . . grant or denial of a license application." *Freeman*, 103 F.2d at 177.

The necessary "triggering" action was absent in this case as well. The FCC never granted or denied petitioners' permit application. Rather, it simply agreed, at petitioners' request, to dismiss the application after Vernal reached a settlement agreement with the other applicants for the Brookville permit. Moreover, although the FCC did grant

the Brookville permit to another applicant, Renda, that grant cannot function as the necessary "triggering" event with respect to petitioners' refund order since, unlike in *Tomah-Mauston*, the refund order did not and could not in any way affect that construction permit.

In *Coalition for Noncommercial Media*, the court was presented with a Commission order which, since it modified two television licenses, arguably fell within the ambit of § 402(b). *See Coalition for Noncommercial Media*, 249 F.3d at 1006-08. However, the court declined to require review under § 402(b), because the Commission had modified the licenses in question on its own initiative. *See id.* at 1008. The license holder had requested modification of channel assignments via a petition for a rulemaking that allowed it to avoid seeking modification of its licenses. *See id.* at 1006-08. The decision explained that had the license holder submitted an application seeking the modification of its license, review would have been required under § 402(b)(6), pursuant to which a party may seek review if it can show that it " 'is aggrieved or [its] interests are adversely affected by an order of the Commission granting or denying any *application* described in paragraphs (1) to (4) and (9) of this subsection.' " *Id.* at 1007 (emphasis in original) (quoting 47 U.S.C. § 402(b)(6)). The fact "[t]hat the Commission leapt forward and on its own hook eliminated the need for such an application does not create an application where none was made." *Id.* at 1008. We thus found appeal under § 402(a) proper.

As noted in *Coalition for Noncommercial Media*, "we have never extended *Tomah-Mauston*." 249 F.3d at 1008. We find no reason to do so here. Accordingly, we conclude that the order at issue here was not "ancillary to" the grant or denial of an order appealable under § 402(b). Consequently, we find that petitioners properly and timely petitioned the court for review under § 402(a).

## B. The FCC's Decision to Deny Petitioners' Refund Request

The FCC's order in this case may not be overturned unless it is "arbitrary, capricious, an abuse of discretion, or other-

wise not in accordance with law." 5 U.S.C. § 706(2)(A). Pursuant to this standard, our review "is highly deferential; we must presume the validity of [the] agency['s] action." *Kisser v. Cisneros*, 14 F.3d 615, 618 (D.C. Cir. 1994) (citation omitted). The court may "reverse only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment." *Id.* at 619 (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415-16 (1971)). Moreover, we must defer to an agency's reasonable application of its own precedents. *See Global Crossing Telecomm., Inc. v. FCC*, 259 F.3d 740, 746 (D.C. Cir. 2001).

What is at issue in this case is the Commission's fee-refund policy that was promulgated in conjunction with the August 1998 *Report and Order* implementing the agency's auction authority, and then explained and enforced by the Commission in *Wade Communications, Inc.*, 16 F.C.C.R. 20,708 (2001). Petitioners present essentially two arguments in support of their challenge to the fee-refund policy. First, they contend that the Commission's failure to grant Vernal's refund request is inconsistent with the fee-refund policy. Second, petitioners contend that the Commission subjected Vernal to unjust disparate treatment in granting fee refunds to other parties who, like Vernal, sought dismissal of their applications pursuant to settlement agreements entered into prior to the issuance of the August 1998 *Report and Order*. Petitioners' arguments are without merit.

At bottom, the petitioners' principal argument is that the fee-refund policy that was promulgated in conjunction with the August 1998 *Report and Order* clearly contemplated fee refunds for parties such as Vernal. The FCC's response is straightforward: The fee-refund policy adopted in conjunction with the August 1998 *Report and Order*

> made clear that [fee] refunds would be available only in the case of applicants who withdrew their applications after the applications had become "subject to resolution by competitive bidding" and the applicant had "file[d] a pleading disavowing any interest in participating in the auction and seeking the dismissal of their application[ ]."

Respondents' Br. at 13 (alterations in original) (quoting *Report and Order*, 13 F.C.C.R. at 15,957 ¶ 102). The Commission's position is unassailable.

Petitioners' press for an expansive interpretation of the fee-refund policy is entirely unconvincing, both because their suggested interpretation is belied by the clear words of the policy and, also, because it ignores the Commission's subsequent decision in *Wade Communications*. In petitioners' view, the *Report and Order* established a policy of refunding filing fees to "all pre-July 1, 1997 applicants who opted not to participate in the auction mandated by the Balanced Budget Act of 1997...." Petitioners' Br. at 12. According to petitioners, refunds may be claimed by parties, like Vernal, who sought dismissals pursuant to settlement agreements entered into *before* the FCC's adoption of the August 1998 *Report and Order* subjecting pending pre-July 1997 applicants to competitive bidding. In other words, petitioners contend that the FCC adopted a policy of refunding fees retroactively to all pre-July 1997 applicants with applications pending at the time the Balanced Budget Act was passed, regardless of whether they settled and sought dismissal prior to August 1998. *See id.* Petitioners contend that when the FCC denied Vernal's refund application, it departed from this policy without a reasoned articulation of its reasons for doing so. *See id.*

We have no trouble concluding that the Commission order in this case rests on the policy promulgated by the FCC in conjunction with the August 1998 *Report and Order* and subsequently enforced in *Wade Communications*. The analysis is not complicated. Section 309(*l*) of the Communications Act authorized the Commission, *in its discretion*, to use competitive bidding *or* comparative hearings to award licenses to mutually exclusive broadcast applicants who, like Vernal, filed their applications prior to July 1, 1997. The Commission did not determine that it would subject pre-July 1997 applications to auction until it issued the August 1998 *Report and Order* implementing § 309(j). Consequently, applicants like Vernal, who settled before the August 1998 *Report and Order*, were never subject to auction.

The discussion of the fee-refund policy promulgated in conjunction with the August 1998 *Report and Order* focused on applicants who "elect[ ] not to participate in [an] auction." 13 F.C.C.R. at 15,957 ¶¶ 101 & 02. *See also id.* at 15,957-58 ¶ 103. When Vernal entered into a settlement agreement it surely was not "electing not to participate in an auction," because the Commission had yet to determine that pre-July 1997 applicants would be subject to auction. Moreover, there is no mention in the fee-refund discussion of applicants who, like Vernal, obtained the benefit of § 309(*l*)(3)'s suspension of FCC settlement caps by entering into agreements during the six months immediately following enactment of the 1997 amendments. In short, the Commission order denying petitioners' refund request is in no manner inconsistent with the policy set forth in conjunction with the August 1998 *Report and Order*.

Petitioners raise several arguments in an attempt to stave off this conclusion. None is persuasive, and only two merit discussion. First, petitioners assert that the FCC's refund of filing fees was undertaken as part of its obligation under § 309(*l*)(3) of the Act to waive regulations necessary to permit pre-July 1, 1997 applicants to enter into agreements resolving mutually exclusive applications. Petitioners' Br. at 13. The portion of the *Notice of Proposed Rulemaking* cited by petitioners does not support this assertion, and we find no support for it in the *Report and Order*, the *Notice of Proposed Rulemaking*, or anywhere else in the record.

Petitioners also point to paragraph 49 of the *Report and Order*. That paragraph, which references the refund provision only in response to a compensation clause issue raised during the notice and comment period, states:

> [W]e will refund upon request all hearing fees actually paid by applicants in proceedings in which the construction permit is awarded by auction rather than by comparative hearing, and all filing fees paid by pre-July 1, 1997 applicants within the scope of Section 309(*l*) who elect not to participate in the auction.

Petitioners' Br. at 14 (quoting 13 F.C.C.R. at 15,939 ¶ 49). Noting the differing language used to describe the refund of hearing and filing fees, petitioners assert that the rule "made it clear" that the refund of filing fees would not be contingent on whether an application was withdrawn pursuant to a settlement leading to the grant of an application without auction or as a result of a unilateral decision by an applicant to dismiss an application in a proceeding wherein the permit was eventually awarded by auction. Petitioners' Br. at 13-14. This argument ignores the common sense observation that no applicant could "elect not to participate in an auction" until being subject to auction. No one was subject to auction until the Commission's issuance of the August 1998 *Report and Order*, months after Vernal's application had been dismissed.

As noted above, if there were any doubts about the meaning of the Commission's fee-refund policy, they were resolved conclusively when the FCC enforced the policy in *Wade Communications* in November 2001. In *Wade Communications*, the Commission explicitly held that applicants like Vernal may not seek refunds of filing fees. *See* 16 F.C.C.R. 20,708. The Commission explained:

> [B]oth the general context and specific language of the [*Report and Order*] clearly state our intention that refunds of filing fees would only apply to the remaining pre-July 1, 1997 applicants for licenses or permits who had not resolved mutual exclusivity through negotiated agreements during the 180-day period and whose pending mutually exclusive applications would therefore be resolved pursuant to our decision to use competitive bidding.

*Id*. at 20,710-11 ¶ 7 (citations omitted). Explaining the rationale behind the distinction it drew, the Commission stated:

> [A]ny applicants that settled within the 180-day period were entitled to negotiate payments from the other mutually exclusive applicants that would cover their costs, including their filing fees, and moreover, pursuant to the statutorily mandated waiver requirement in section 309(*l*), could also negotiate payment amounts that

> exceeded their costs. Therefore, any equities that might apply to non-settling applicants and warrant refund of filing fees do not apply with the same force to these applicants.

*Id.* at 20,711-12 ¶ 9.

*Wade Communications* eliminates any conceivable ambiguity as to the FCC's refund policy. It also makes clear that the Commission, in denying petitioners' refund request, did not depart from its established precedent regarding fee application refunds. Moreover, in its discussion of the benefits available to applicants who settled within the 180-day period, *Wade Communications* demonstrated the reasonableness of the FCC's decision to distinguish between applicants who took advantage of the settlement opportunity created by § 309(*l*) and those who waited to see whether the Commission would use comparative hearings or competitive bidding to resolve pending pre-July 1997 applications. *See Cassell v. FCC*, 154 F.3d 478, 484 (D.C. Cir. 1998).

Petitioners' disparate treatment argument bears little discussion. We recently reaffirmed our well-established view that an agency is not bound by the actions of its staff if the agency has not endorsed those actions. *See Cmty. Care Found. v. Thompson*, 318 F.3d 219, 227 (D.C. Cir. 2003) (citing *Amor Family Broad. Group v. FCC*, 918 F.2d 960 (D.C. Cir. 1991)). *See also Jelks v. FCC*, 146 F.3d 878, 881 (D.C. Cir. 1998); *MacCleod v. ICC*, 54 F.3d 888, 891 (D.C. Cir. 1995). The Commission has acted consistently with respect to the refund of application fees to parties in a position similar to Vernal's. In the August 1998 *Report and Order*, the Commission adopted a policy against refunding fees to applicants who resolved their exclusivity by settlement during the 180-day period provided for in the Communications Act. Petitioners point to no order in which the Commission has acted contrary to this policy. In *Wade Communications* and in the order now before this court, the Commission denied the requested fee refunds. It is true that, in a few instances, staff in the Commission's OMD, without authorization from the Commission, granted fee-refund requests. But

staff error cannot bind an agency and force it, in effect, to continue such errors.

The Commission's order in this case convincingly explains why the fee-refund policy adopted in conjunction with the August 1998 *Report and Order* and enforced in *Wade Communications* required denial of Vernal's request. The Commission's order clearly survives scrutiny under the arbitrary and capricious standard of review. Therefore, the petitioners' challenge must fail.

## III. CONCLUSION

For the reasons noted above, the petition for review is dismissed.