### ASSOCIATION OF COMMUNICATIONS ENTERPRISES, Petitioner,

### v.

### FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.

### SBC Communications Inc., et al., Intervenors.

### No. 00–1144.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 2001.

Decided June 26, 2001.

Charles C. Hunter argued the cause for petitioner. With him on the briefs was Catherine M. Hannan.

Rodger D. Citron, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were Christopher J. Wright, General Counsel, John E. Ingle, Deputy Associate General Counsel, and Laurence N. Bourne, Counsel. Catherine G. O'Sullivan and Nancy C. Garrison, Attorneys, U.S. Department of Justice, entered appearances.

Robert McDonald, Mark L. Evans, Donna N. Lampert, Mark J. O'Connor, M. Robert Sutherland, Roger K. Toppins, James D. Ellis, Alfred G. Richter, Dan L. Poole, Robert B. McKenna, William P. Barr, M. Edward Whelan, III, Michael E. Glover, Edward Shakin and Lawrence W. Katz appeared on the brief of intervenors America Online, Inc., et al.

Before: STEPHEN F. WILLIAMS, GINSBURG, and ROGERS, Circuit Judge.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

In order to foster competition in telecommunication markets, the Telecommunications Act of 1996, 47 U.S.C. §§ 151 *et seq.*, requires that an incumbent local exchange carrier (incumbent or ILEC) "offer for resale at wholesale rates any telecommunications service that the carrier provides at retail to subscribers who are not telecommunications carriers." 47 U.S.C. § 251(c)(4)(A). The idea is to enable other carriers to compete with incumbents at the retail level.

In the *Second Report and Order* (Order) in CC Docket No. 98–147, *Deployment of Wireline Services Offering Advanced Telecommunications Capability* (1999), the Commission determined that the discount-for-resale provision applies when an incumbent offers digital-subscriber-line (DSL) service to an end-user but not when it offers DSL service to an internet service provider (ISP). The Commission maintains that the latter offering is not made "at retail" because the ISP packages and ultimately resells the service to end-users. The petitioner, an association of telecommunications providers, claims that the

Commission's position is contrary to the Act or, alternatively, unreasonable. Finding no merit in either claim, we deny the petition for review.

## I. Background

In addition to plain old telephone service (POTS), the ILECs provide various advanced services, foremost among which is DSL service. (For a description of DSL technology, see *WorldCom, Inc. v. FCC,* 246 F.3d 690, 692 (D.C.Cir.2001).) An ILEC may offer DSL service directly to residential and business end-users, in which event the ILEC itself performs such collateral functions as marketing, billing, and maintenance. In addition, the ILEC may offer DSL service designed specifically for ISPs (such as America Online), which package and sell the service to end-users and perform the marketing and other collateral functions.

At issue in this case is that part of the *Second Report and Order* in which the Commission addressed the question whether the resale requirement of § 251(c)(4)(A) applies to an ILEC's offering of advanced services. As the Commission acknowledged, it had previously determined that advanced services constitute "telecommunications service" and that the end-users and ISPs to which the ILECs offer such services are "subscribers who are not telecommunications carriers" within the meaning of § 251(c)(4)(A). The remaining issue, therefore, was whether an ILEC's offering of certain advanced services, including DSL, is made "at retail" so as to trigger the discount requirement. The Commission ultimately concluded that

> while an incumbent LEC DSL offering to residential and business end-users is clearly a retail offering designed for and sold to the ultimate end-user, an incumbent LEC offering of DSL services to Internet Service Providers as an input component to the Internet Service Provider's high-speed Internet service offering is not a retail offering. Accordingly, ... DSL services designed for and sold to residential and business end-users are subject to the discounted resale obligations of section 251(c)(4).... [H]owever, ... section 251(c)(4) does not apply where the incumbent LEC offers DSL services as an input component to Internet Service Providers who combine the DSL service with their own Internet Service.

The Association of Communication Enterprises (ASCENT) petitioned for review of this determination, and various telecommunications and DSL providers intervened on behalf of the Commission.

## II. Analysis

Although ASCENT is by no means precise on the point, we take it to be making arguments under both step one and step two of *Chevron U.S.A. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). That is, the petitioner claims first that the Commission's interpretation of the term "at retail" is inconsistent with the Congress's use of that term and, alternatively, that the Commission is being unreasonable insofar as it interprets the term as not including an ILEC's offering of advanced services to an ISP.

As the Commission states in the Order, and ASCENT does not dispute, "The Act does not define the term 'at retail' and the legislative history on section 251(c)(4) provides only minimal clarification of Congress' intentions with regard to the appropriate definition and application of the term." Therefore, the Commission invoked the authority of BLACK'S LAW DICTIONARY (6th ed.1990) and WEBSTER'S DELUXE UNABRIDGED DICTIONARY (2d ed.1987), and construed "retail transactions [as] necessarily involv[ing] direct sales of a product

or service to the ultimate consumer for her own personal use or consumption."

ASCENT argues that the Commission thereby did violence to the plain meaning of the phrase "at retail":

> [U]nless an ISP is reselling DSL service without substantial alteration of its form or content ... it is consuming that service in creating the information service it is selling to the public. Resale is an essential element of a wholesale transaction; consumption is an integral part of a retail transaction.

Although ASCENT correctly asserts, per BLACK's, that "wholesale" entails a "sale ... to one who intends to resell," there is no justification for ASCENT's claim that a product "substantially altered" in form or content is by definition "consumed." To use ASCENT's own example, an automobile manufacturer that converts raw steel into motor vehicles can reasonably be said to purchase its steel "wholesale" notwithstanding that it substantially alters that steel before selling its finished goods on the retail auto market. *See* BLACK's (sale for "further sale *or processing*" not a sale at "retail") (emphasis added).

ASCENT's other textual arguments, namely, that the Commission has "attempt[ed] to write into the text of Section 251(c)(4) certain exemptions" and that it has "undermine[d] the viability.of resale as a means of competing in the local telecommunications market," beg the question at issue: § 251(c)(4)(A) applies and the discount requirement comes into play only if a particular offering is in fact "at retail." The same is true of ASCENT's make-

weight argument that the Commission has usurped the authority of the states to set wholesale rates under 47 U.S.C. § 252(d)(3), which likewise applies only to services offered "at retail" under § 251(c)(4).

Because the Congress did not itself resolve the present issue, we turn to AS-CENT's arguments under *Chevron* step two that the Commission's interpretation of the Act is unreasonable. Here AC-SENT argues that the Commission impermissibly ignored record evidence and its own precedent indicating that ISPs are indistinguishable from end-users.

Initially ASCENT complains that, because DSL services are offered indifferently to all pursuant to a tariff, even an ILEC's offering that is tailored to the needs of ISPs is available likewise to any end-user that can use them. Such an offering requires the purchaser to make term and volume commitments, and does not include customary retail functions, such as marketing, billing, and maintenance. The petitioner suggests that large, corporate end-users with the requisite need and the ability to perform those functions for themselves might take the service. That mere possibility, however, does not invalidate the Commission's interpretation of the statute. If in the future an ILEC's offering designed for and sold to ISPs is shown actually to be taken by endusers to a substantial degree, then the Commission might need to modify its regulation to bring its treatment of that offering into alignment with its interpretation of "at retail," but that is a case for another day.*

---

* ASCENT further argues in its reply brief that the Order, by seeming to remove from the ambit of § 251(c)(4)(A) "any DSL service offering provided to any ISP, regardless of the terms of the offering," impermissibly delegates authority to ILECs — the regulated entities — to determine what offers are outside the discount-for-resale requirement. Because this argument does not appear in ASCENT's initial brief, the Commission did not have an opportunity to address it, nor shall we. *See Coalition for Noncommercial Media v. FCC*, 249 F.3d 1005, 1010 (D.C.Cir.2001).

ASCENT turns next to possible inconsistencies between the Commission's approach in the Order under review and in a prior proceeding. In particular, the petitioner seizes upon the Commission's earlier statement that "the services independent public payphone providers [IPPPs] obtain from incumbent LECs are telecommunications services that incumbent LECs provide 'at retail to subscribers who are not telecommunication carriers' and that such services should be available at wholesale rates to telecommunications carriers." *Local Competition Order*, 11 F.C.C.R. 15,-499 at ¶ 876 (1996). ASCENT maintains that for present purposes an IPPP is indistinguishable from an ISP in that it purchases, bundles, and then resells to end-users a telephone service — in the case of IPPPs it is POTS — and that the Commission is therefore unjustified in treating the IPPP but not the ISP as an end-user.

This argument has force, but it cannot carry the day for two reasons: First, the analogy between an ISP and an IPPP is not so close; the POTS an ILEC sells to an IPPP is the same POTS that the IPPP sells to end-users, whereas the DSL service it sells an ISP is distinct because it does not include the collateral functions the ISP performs for endusers. Second, just two paragraphs earlier in the same order, the Commission had determined that offerings of exchange access services tailored for interexchange carriers (IXCs) are not subject to § 251(c)(4) in part because those services "are designed for, and sold to, IXCs as an input component to the IXC's own retail services," namely long distance services. *Id.* at ¶ 874. In the Order now under review the Commission marshaled its treatment of IXCs as the most relevant precedent. ASCENT does not now distinguish that treatment in any meaningful way, but attributes it to the Commission's rationale that exchange access services, which IXCs purchase, are used primarily by telecommunications carriers. That does not confront the Commission's independent rationale that IXCs supply their own service to end-users — as do ISPs. In any event, if there is tension between the Commission's treatment of IXCs and IPPPs, its resolution is not now before us; it is enough for our purposes that the Commission in the present Order treated ISPs like IXCs, regardless how it treated IPPPs in a prior order.

ASCENT's remaining points are less weighty. First it contends the Commission previously had rejected the suggestion that volume-based discounts or the absence of various retail functions take an offering outside the reach of § 251(c)(4). *Id.* at ¶ 951; *Application of BellSouth Corp.*, 13 F.C.C.R. 539 at ¶ 220 (1997). In those instances, however, the Commission did not address offerings specifically designed for customers other than end-users. Second,ASCENT points out that the Commission has treated ISPs as end-users for other purposes. That is of no moment if the Commission was reasonable, as we have seen that it was, in treating them as resellers whose purchases from ILECs are not made "at retail" for the purposes of § 251(c)(4)(A). In sum, having considered ASCENT's objections, we find the Commission's Order in all respects reasonable.

### III. Conclusion

For the foregoing reasons, the petition for review is

*Denied.*